UNITED STATES of America, Plaintiff–Appellee,

v.

Marvin Joe PATTERSON, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Thomas Charles LAYTHE, Defendant–Appellant.

Nos. 93–5940, 93–5948.

United States Court of Appeals, Fourth Circuit.

Argued July 20, 1994.

Decided Oct. 25, 1994.

**ARGUED:** Stanley David Young, Young & Douglas, Asheville, NC, for appellant Patterson; Ronald Carl True, Lindsay & True, Asheville, NC, for appellant Laythe. Jerry Wayne Miller, Asst. U.S. Atty., Office of the U.S. Atty., Asheville, NC, for appellee. **ON BRIEF:** Mark T. Calloway, U.S. Atty., Asheville, NC, for appellee.

Before LUTTIG and WILLIAMS, Circuit Judges, and JOSEPH F. ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part and dismissed in part by published opinion. Judge WILLIAMS wrote the opinion, in which Judge LUTTIG and Judge JOSEPH F. ANDERSON, Jr. joined.

## OPINION

WILLIAMS, Circuit Judge:

Marvin Joe Patterson and Thomas Charles Laythe appeal their sentences imposed pursuant to their convictions under 21 U.S.C. § 841(a)(1) (1988) and 21 U.S.C.A. § 841(b)(1)(C) (West & Supp.1994). Pursuant to written plea agreements, Patterson pled guilty to unlawful distribution of morphine sulfate and meperidine on May 21, 1992, which resulted in the death of Tracy Sue Carroll, in violation of 21 U.S.C. § 841(a)(1). Laythe pled guilty to aiding and abetting in that offense, in violation of 18 U.S.C. § 2 (1988) and 21 U.S.C. § 841(a)(1).[1] Each Defendant specifically reserved the right to contest at sentencing whether Carroll's death indeed resulted from his distribution of controlled substances. Under 21 U.S.C.A. § 841(b)(1)(C), a person convicted of violating § 841(a) by distributing schedule I or II controlled substances (such as morphine and meperidine) "shall be sentenced to a term of imprisonment of not less than

1. In return for their pleas to Count 2, the Government dismissed the remaining counts against Patterson and Laythe. Count 1 charged Patterson with possession with intent to distribute controlled substances on May 21, 1992, and charged Laythe and another codefendant with aiding and abetting that crime. Count 3 charged Patterson with possession with intent to distribute morphine sulfate on April 6, 1992. Count 4 charged Patterson with distribution of morphine sulfate which resulted in the serious injury of Candy Hope McRae on April 6, 1992.

twenty years or more than life" when "death or serious bodily injury results from the use of such substance." 21 U.S.C.A. § 841(b)(1)(C). The district court sentenced Patterson to 240 months imprisonment and Laythe to 87 months imprisonment.

On appeal, Patterson and Laythe contest their sentences, alleging that the district court erroneously found that Carroll's death resulted from their acts. Laythe also contends that, based upon his aberrant behavior and his minimal or minor participation in the offense, the district court should have granted a downward departure under the United States Sentencing Guidelines (U.S.S.G.).[2]

We affirm the sentences of both Patterson and Laythe and, because Laythe's challenge to the district court's failure to depart downward is not appealable, we dismiss his appeal of that issue.

### I.

On May 20, 1992, Carroll, a minor who was Laythe's date for the evening, attended a party at Laythe's residence, to which she had also invited Patterson. Patterson brought controlled substances to the party, including Demerol, Mepergan, morphine sulphate, and Valium, all in tablet or capsule form.[3] In exchange for a tattoo, Patterson gave Laythe some of the meperidine and Valium which Laythe put in a box and placed in his bathroom. Carroll later told Patterson, in Laythe's presence, that she was "going to shoot some drugs." (J.A. at 114.) After a discussion with Carroll and Laythe, Patterson left with another guest to obtain syringes from Patterson's residence. Upon Patterson's return, Carroll told him that Laythe "had been giving her the pills [Patterson] traded him all night.". (J.A. 116.) Then Patterson, Laythe, Carroll, and others went into the bathroom and injected morphine that Patterson had melted down. Although

it is disputed whether Patterson physically injected Carroll, it is undisputed that he provided the drugs and syringes and assisted Carroll by holding her arm to "pop up" a vein for a morphine injection. (J.A. at 117.) Carroll and Laythe passed out shortly after midnight. Patterson and two others injected Patterson's remaining meperidine and morphine and went to sleep around 4:00 a.m. When Patterson and Laythe awoke, they found Carroll dead.

Patterson and Laythe were arrested, indicted, and pled guilty to, respectively, the distribution of controlled substances under 21 U.S.C. § 841(a)(1), and aiding and abetting in such offense under 18 U.S.C. § 2. In their plea agreements, each reserved the right to contest at sentencing whether Carroll's death "resulted" from the distribution of the controlled substances alleged in the indictment. During the sentencing hearing, the district court heard extended testimony as to the factual relationship between Appellants' activities and Carroll's death, and found that "the death did result [from] the drugs brought by the Defendant Patterson to the party." (J.A. at 183.) Accordingly, the district court adopted the suggested Sentencing Guideline imprisonment range, as modified by the application of § 841(b)(1)(C), from the presentence investigation report (PSR) for each Appellant. Patterson was sentenced to 240 months, the lower end of his mandatory minimum guideline range of 240–262 months. Accepting the Government's U.S.S.G. § 5K1.1 motion for downward departure as a result of Laythe's substantial assistance, the district court sentenced Laythe to 87 months.

### II.

On appeal, Patterson and Laythe argue that the Government must prove beyond a reasonable doubt, rather than by a preponderance of the evidence, that Carroll's death

---

2. United States Sentencing Commission, *Guidelines Manual*, § 3B1.2 (Nov.1992).

3. Demerol and Mepergan are brand names for meperidine. *Physician's Desk Reference* 2093, 2559 (48th ed.1994). Meperidine is a Schedule II controlled substance. 21 C.F.R. § 1308.12(c) (1994). Morphine sulfate, a soluble salt of morphine, is used as an analgesic and sedative, *Web-*

*ster's Third New Int'l Dictionary, Unabridged* 1471 (1986), and is a controlled substance under Schedule I, 21 U.S.C. § 812 (1988). For the purposes of this opinion, because morphine is the common name for morphine sulfate, "morphine" and "morphine sulfate" are used interchangeably.

resulted from a violation of 21 U.S.C. § 841(a)(1), in order to impose the twenty-year mandatory minimum sentence under 21 U.S.C.A. § 841(b)(1)(C). They also contend that the district court erred in not requiring the Government to prove that Carroll's death was a foreseeable result of their distribution of controlled substances before applying § 841(b)(1)(C). Finally, Laythe argues that the district court erred in refusing to make a further downward departure in his sentence by rejecting Laythe's arguments that (1) he was a minor or minimal participant under U.S.S.G. § 3B1.2, and that (2) his actions were the result of a single act of aberrant behavior. We address each contention in turn.

### A.

■ Appellants maintain that § 841(b)(1)(C) is an essential element of the offense of distributing controlled substances and that, as a result, the Government must show beyond a reasonable doubt that Carroll's death resulted from the drugs Appellants distributed.[4] Under the Due Process Clause of the Fourteenth Amendment, it is well established that the Government must prove every necessary fact that constitutes the crime charged against a defendant. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). Yet, the Government is not required to " 'prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment.' " *McMillan v. Pennsylvania*, 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986) (quoting *Patterson v. New York*, 432 U.S. 197, 206–07, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977) (Government must prove beyond a reasonable doubt all the elements of charged offense)). In determining whether a particular statutory provision is an "essential element of the offense" requiring proof beyond a reasonable doubt or is a "sentencing enhancement" requiring proof only by a preponderance of the evidence, "the legislature's definition of the elements of an offense controls." *See United States v. Cross*, 916 F.2d 622, 623 (11th Cir.1990) (citing *McMillan*, 477 U.S. at 85, 106 S.Ct. at 2415–16), *cert. denied*, 499 U.S. 929, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991).

Under the principles laid out in *McMillan*, we conclude that from a close textual analysis, the mandatory minimum provision in § 841(b)(1)(C) is a sentencing enhancement provision. The plain language contained in § 841(b)(1)(C) clearly indicates that punishment is predicated upon conviction under another statute—21 U.S.C. § 841(a). *See* 21 U.S.C. § 841(b) ("any person who violates subsection (a) of this section shall be sentenced as follows"); *cf. United States v. Vasquez–Olvera*, 999 F.2d 943, 945 (5th Cir. 1993) (in determining whether statutory provision is separate offense or sentence enhancement, "foremost feature of a sentence enhancement provision" is that it "predicates punishment upon conviction under another section"), *cert. denied*, —— U.S. ——, 114 S.Ct. 889, 127 L.Ed.2d 82 (1994).

■ Furthermore, a strong analogy can be drawn from the holdings of this Circuit and others that 21 U.S.C. § 841(b)(1)(A), which provides increased mandatory sentences for violations of § 841(a) involving certain amounts of controlled substances, is a sentencing enhancement provision requiring proof only by a preponderance of the evidence. *United States v. Powell*, 886 F.2d 81, 85 (4th Cir.1989), *cert. denied*, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990). *See also United States v. Uwaeme*, 975 F.2d 1016, 1018 (4th Cir.1992); *Cross*, 916 F.2d at

---

4. Appellants faced a minimum twenty-year sentence under § 841(b)(1)(C) if death resulted from the use of the drugs they distributed. 21 U.S.C. § 841(b)(1)(C).

  Had Appellants been sentenced based on the quantity of drugs distributed, their base offense level under the Sentencing Guidelines for distributing less than five grams of Schedule I or II opiates would be level 12. At their Criminal History category of III, they would have been sentenced within the range of 15–21 months, U.S.S.G. § 5A, Sentencing Table, subject to a further reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a), and timely notification of intention to plead guilty, § 3E1.1(b)(2).

623.[5] The similarity in language used in the provisions, as well as the shared title of "penalties" and the shared introductory phrase providing for enhancements in sentencing where a violation of § 841(a) has occurred, supports our conclusion that § 841(b)(1)(C) is a sentencing enhancement provision and that the Government needs to prove facts supporting enhancement only by a preponderance of the evidence. Accordingly, we conclude that death or serious bodily injury resulting from the distribution of controlled substances as defined under § 841(b)(1)(C) is a sentencing enhancement provision which must be proved by a preponderance of the evidence.

Next, Appellants maintain that, even if the district court was correct in applying a preponderance of the evidence standard, the evidence presented at the sentencing hearing was not sufficient to meet that standard. In particular, Appellants argue that they pled guilty only to the distribution of morphine, *not* meperidine, and that because the level of *morphine* in Carroll's system was not fatal standing alone, Carroll's death did not "result" from the use of the morphine they distributed. Accordingly, they argue, the sentence enhancement under § 841(b)(1)(C) cannot apply. This argument has no merit. The record indicates that Patterson and Laythe both pled guilty to Count 2, which charged them with the distribution of both morphine sulfate and meperidine. Furthermore, neither denied his distribution of meperidine in his written plea agreement or elsewhere in the record. *See Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (defendants' statements at plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier" at later proceedings). Because Appellants pled guilty to the distribution of morphine sulfate and meperidine, the district court could enhance their sentences pursuant to § 841(b)(1)(C) if it found that Carroll's death resulted from the use of the controlled substances.

We review the district court's factual determination that death resulted from the use of the proscribed drugs under the clearly erroneous standard. *United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989). The medical examiner testified at the sentencing hearing that Carroll's body had only one fresh, obvious "needle stick." (J.A. at 61.) Toxicological analyses revealed that the concentration of meperidine in her body was at a fatal level, although the concentration of morphine was not at a fatal level associated with an overdose. She also had taken diazepam (Valium). The medical examiner stated that, in his opinion, "the combination of Demerol [meperidine] and morphine in Tracy Sue Carroll was the direct cause of her death." (J.A. at 59.) The district court found that Carroll died from an overdose of meperidine and morphine,[6] and that Carroll's death resulted from the drugs distributed by Patterson. Because the record contains more than sufficient evidence to support the district court's finding, by a preponderance of the evidence, that Carroll's death resulted from the admitted distribution of morphine and meperidine, we find no clear error.

## B.

Next, Patterson and Laythe argue that the district court erred in not explicitly

---

**5.** The Tenth Circuit rejected an argument similar to Appellants' in *United States v. Washington,* 11 F.3d 1510 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1404, 128 L.Ed.2d 76 (1994), where the defendant's sentence was enhanced based on the quantity of drugs under U.S.S.G. §§ 2D1.1(c)(2) and (6). (Section 2D1.1 also contains a sentence enhancement provision that parallels § 841(b)(1)(C) and applies when a defendant is convicted under § 841(b)(1)(C) and death results from the use of controlled substances. U.S.S.G. § 2D1.1(a)(2)).

The defendant in *Washington* argued that a higher standard of proof should have been required to show quantity "because the additional drug quantities effectively resulted in a life sentence." 11 F.3d at 1515. The court rejected this argument, finding that "sentencing facts in the ordinary case [need not] be proved by more than a preponderance standard." *Id.* at 1516 (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986)).

**6.** Although the morphine in Carroll's body was not at a fatal level, the court determined that the morphine could have had an additive effect in combination with the meperidine.

finding that the Government was required to prove that Carroll's death was the intended or foreseeable result of their distribution of controlled substances under 21 U.S.C. § 841(b)(1)(C). Specifically, they argue that (1) the statute imposes a "reasonable foreseeability of death" requirement, and (2) the Government failed to provide sufficient evidence to prove that the death of Carroll was, in fact, a reasonably foreseeable consequence of their actions. However, because we find that § 841(b)(1)(C) imposes no reasonable foreseeability requirement, we need not address the question whether Carroll's death was reasonably foreseeable.

Quite simply, the plain language of § 841(b)(1)(C) does not require, nor does it indicate, that prior to applying the enhanced sentence, the district court must find that death resulting from the use of a drug distributed by a defendant was a reasonably foreseeable event. The statute provides:

> In the case of a controlled substance in schedule I or II ... such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life....

21 U.S.C. § 841(b)(1)(C). The statute puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute. *See Salomon Forex, Inc. v. Tauber,* 8 F.3d 966, 975 (4th Cir.1993) (when plain language reveals Congress' intent, there is no need for further interpretation). Where serious bodi-

ly injury or death results from the distribution of certain drugs, Congress has elected to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result.[7] We will not second-guess this unequivocal choice.

Appellants argue that we should draw an analogy to recent drug conspiracy cases in which defendants, whose convictions are based upon the total quantity of drugs in the conspiracy, are sentenced according to the quantity of drugs reasonably foreseeable to each defendant. *See, e.g., United States v. Irvin,* 2 F.3d 72, 78 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994). We decline to do so.

Under the Sentencing Guidelines, the district court must first determine the appropriate offense level based, in part, upon the following relevant conduct:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), *all reasonably foreseeable acts* and omissions of others *in furtherance of the jointly undertaken criminal activity,*

that occurred during the commission of the offense of conviction....

U.S.S.G. § 1B1.3(a)(1) (emphasis added). Hence, in a drug conspiracy case, under sub-

---

**7.** Congress understands how to place a reasonable foreseeability requirement into a sentencing enhancement provision and has explicitly done so in the past. For example, Congress has recently incorporated a reasonable foreseeability requirement into a sentencing enhancement provision of the Controlled Substances Act. The Continuing Criminal Enterprise section of the Controlled Substances Act, 21 U.S.C.A. § 848 (West Supp.1994), states, in relevant part:

> In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider mitigating factors, including the following:
>
> ....
>
> (4) The defendant could not reasonably have foreseen that the defendant's conduct in the

course of the commission of murder, or other offense resulting in death for which the defendant was convicted, would cause, or would create a grave risk of causing, death to any person.

21 U.S.C.A. § 848(m)(4). The fact that Congress expressly included reasonable foreseeability language under § 848(m)(4) when an intentional killing occurs during a CCE, but did not use language indicating reasonable foreseeability as a factor in § 841(b)(1)(C), further demonstrates that Congress did not intend for reasonable foreseeability to be considered when determining sentence enhancements under § 841(b)(1)(C). *See Moore v. Harris,* 623 F.2d 908, 914 (4th Cir.1980) (use of different language infers that Congress meant different things).

section (B) a defendant is deemed accountable for both the quantity of drugs he personally distributed and any quantities distributed by his coconspirators which are reasonably foreseeable to him. In this case, Appellants' criminal acts, the distribution of, and aiding and abetting in the distribution of, morphine and meperidine, are wholly encompassed within the express language of subsection (A), which does not require a finding of reasonable foreseeability.

■ Finally, Appellants argue that there is an intervening or superseding cause exception to the application of § 841(b)(1)(C). Specifically, Appellants argue that Carroll's ingestion of meperidine, and her alleged drug addiction and suicidal tendencies as reflected by a summary of her medical history introduced at sentencing, were intervening or superseding causes that prevented her death from being attributed to their drug distribution. We need not address this question, however, because the record supports the district court's rejection of Appellants' argument. The district court considered the medical records and the testimony concerning the circumstances and events leading up to Carroll's death before it rejected Appellants' contention that her death was a suicide. We find no clear error in the district court's ruling.

### C.

■ Notwithstanding the authority it had to sentence Laythe to the statutory minimum under § 841(b)(1)(C), the district court accepted the Government's § 5K1.1 motion for downward departure as a result of Laythe's substantial assistance. Accordingly, the district court sentenced Laythe to 87 months imprisonment, which was far below the guideline range indicated in his presentence report.[8] Laythe argues, however, that the district court erred in refusing to make a *further* downward departure pursuant to U.S.S.G. § 3B1.2 based upon the district

court's finding that he was not a minor or minimal participant, and in refusing to depart further downward because it found that his actions did not represent a single act of aberrant behavior, *see United States v. Glick*, 946 F.2d 335, 338 (4th Cir.1991). The district court understood its authority to depart downward for these reasons, but chose not to do so, finding that the facts did not warrant either departure. As we have repeatedly held, a district court's refusal to depart downward from the applicable sentencing guideline range is not appealable by the defendant. *United States v. Bayerle*, 898 F.2d 28, 30–31 (4th Cir.), *cert. denied*, 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990). Our inability to review the district court's refusal to depart downward is not altered by the fact that the district court departed downward on other grounds. *United States v. Ghannam*, 899 F.2d 327, 328 (4th Cir.1990) ("It is not a sentence within the guideline range that is immune from appeal but instead the refusal to downward depart itself."). Because the district court's refusal to depart on these grounds is not appealable, we dismiss this portion of Laythe's appeal. *See Bayerle*, 898 F.2d at 32.

### III.

For the foregoing reasons, we affirm the sentences of Patterson and Laythe, and dismiss the portion of Laythe's appeal that challenges the district court's refusal to make an additional downward departure.

*AFFIRMED IN PART; DISMISSED IN PART.*

---

8. The district court could have sentenced below the statutory minimum only if this departure was based on the Government's motion for downward departure due to Defendant's substantial assistance. 18 U.S.C.A. § 3553(e) (West Supp. 1994); *United States v. Blackwood*, 913 F.2d 139, 144 n. 3 (4th Cir.1990). Although Laythe's plea agreement recommended an incarceration cap of 60 months, the agreement recognized that the Government's recommendations therein were non-binding and that the district court had discretion to impose up to the statutory maximum sentence.