**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5444

MARK ANTONIUS ALLEN, a/k/a Snoop,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                      No. 95-5459

MICHAEL PEAKS, a/k/a Michael
Peake,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-94-249)

Argued: December 6, 1996

Decided: July 21, 1999

Before ERVIN and MICHAEL, Circuit Judges,
and HALL,* Senior Circuit Judge.

_____

*Senior Judge Hall heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

Affirmed in part and remanded in part by unpublished opinion. Judge Ervin wrote the opinion, in which Judge Michael joined.

_____

## COUNSEL

**ARGUED:** Thomas Franklin Loflin, III, Durham, North Carolina, for Appellant Allen; Walter Thaniel Johnson, Jr., Greensboro, North Carolina, for Appellant Peaks. Robert Michael Hamilton, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, David B. Smith, Assistant United States Attorney/Senior Litigation Counsel, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

ERVIN, Circuit Judge:

Mark Antonius Allen ("Allen") and Michael Peaks ("Peaks") were both convicted by a jury of conspiracy to possess with intent to distribute and conspiracy to distribute cocaine base ("crack cocaine") in violation of 21 U.S.C.A. §§ 841(b)(1)(A) (West 1981 & Supp. 1994), 846 (West 1981 & Supp. 1999).[1] Peaks raised two challenges to his conviction and one to his sentencing. With regard to his conviction,

_____

[1] The Court has been informed by the Bureau of Prisons that the defendant, Mark Antonius Allen, died on May 9, 1999, as a result of a cardiac arrest. As to him, this appeal has now abated. His appeal is dismissed and this case is remanded to the district court with instructions to vacate the judgment against him and to dismiss his indictment. See United States v. Dudley, 739 F.2d 175, 176 (4th Cir. 1984) (collecting cases). Therefore, we only address the claims raised by the co-defendant, Michael Peaks, herein.

2

Peaks argued that the judge's jury instructions constructively amended his indictment in violation of the Fifth and Sixth Amendments of the Constitution. In the alternative, Peaks argued that there was a prejudicial variance between the indictment and the evidence presented at trial violating either the Fifth or Sixth Amendment. With respect to his sentencing, Peaks argued that the district court erred in calculating the amount of cocaine attributed to him.

We reject all of Peaks' arguments. First, because we interpret liability under § 846 as only requiring proof of a controlled substance, as defined by § 841, and not proof of a particular drug, we hold that there was no constructive amendment. Second, because there was no evidence of lack of notice or a threat of double jeopardy, we hold that there was no prejudicial variance. Third, after reviewing the record, we hold that the district court's calculation of the amount of cocaine attributable to Peaks was not clearly erroneous. We, therefore, affirm the judgment of the district court.

I.

Allen and Peaks were indicted on October 31, 1994, for one count of conspiracy to "knowingly, intentionally and unlawfully" possess with intent to distribute and to distribute in excess of 50 grams of crack cocaine "[b]eginning in the Spring of 1991 . . . and continuing up to and including July 1994." Both defendants pled not guilty and a jury trial ensued.

At trial, the Government presented testimony of many members of the "Pimps," a group that purchased powder cocaine from the defendants and then converted it into crack cocaine for sale, and from persons involved in other facets of the conspiracy. The defendants' trial strategy was essentially to impeach the credibility of the Government witnesses. Although the evidence that both defendants were selling powder cocaine was quite strong, there was almost no evidence that showed that either of the defendants actually had knowledge of or involvement in the conversion of the powder to crack. Similarly, no evidence directly linked either defendant to the conspiracy until the summer or fall of 1992, even though the indictment alleged that they had begun to sell crack in 1991.

3

The district court recognized this disparity and during the trial asked the Government, "We have heard nothing about the crack with respect to [the defendants]. Is the evidence going to show that Allen and Peaks distributed powder only?" The Government responded, "They distributed powder that was cooked up. But the evidence will show that they were aware that it was being cooked up."

The only evidence the Government presented concerning the defendants' knowledge that their powder cocaine was being converted into crack cocaine was the testimony of two witnesses, Michael Kearney ("Kearney") and James Davis, III ("Davis").

Kearney testified that on more than one occasion both he and Peaks had utilized the term "come back" in conversations with each other. Kearney explained that "come back" was "a terminology that's used quite often among drug dealers, when transforming powder cocaine to rock or free base substance. And the terminology is used to express how much of the powder came back into rock form." After explaining the process of converting powder cocaine into crack cocaine, Kearney characterized the powder cocaine he had received from Peaks as "good" for conversion into crack cocaine.

Davis testified about a conversation between himself, Allen, and another individual. Davis told Allen that the cocaine powder Allen had sold to Davis was "alright" and that Davis had lost one or two grams of cocaine in the conversion process from powder to crack. Davis concluded, "They really didn't respond to it, but--like, they didn't know nothing about crack."

At the conclusion of the Government's case, both defendants submitted motions for acquittal pursuant to Fed. R. Crim. P. 29. They argued that there was a "fatal variance" between the indictment and the Government's evidence at trial. In particular, the defendants characterized Kearney's testimony as inadequate because he "gave no context" for the use of the term "come back." The Government responded that the defendants knew that the powder they supplied was being converted into crack.

Setting aside the question of knowledge, the judge asked how the defense was prejudiced by the disparity between the indictment and

4

the government's evidence. The defendants responded by asserting two grounds for prejudice. First, the defendants argued that had they known that they were being charged for chain trafficking (where the defendants were "middle men" who supplied the raw material to others who then made it into the final product and distributed it themselves) instead of simple trafficking (where the defendants would have been the final distributors of the drugs), their trial strategy would have been very different. Second, the defendants argued that allowing the Government to prove "crack" cocaine through such attenuated reasoning violated their presumption of innocence and right to proof beyond a reasonable doubt.

The district court denied the motion for acquittal. The judge reasoned that § 846 should be interpreted as follows:

> The statute makes no distinction, in making it a crime, about whether it is cocaine powder or cocaine crack. . . .[O]n the question of guilt, you don't have to say whether it's crack or powder, you just have to show that it's cocaine.

The defendants presented their cases and the trial concluded. At the conclusion of the jury instructions conference, the district court summarized the defendants' objections to the jury instructions as "[e]ssentially, the defendants are saying that there is either a conspiracy to possess and deliver crack cocaine, or there is no conspiracy at all." The judge concluded that "there can be a conspiracy, even though the indictment alleges cocaine base, crack. .. . [A]s long as the jury finds beyond a reasonable doubt that cocaine in any of its forms was the basis of the agreement, . . . there can be a conviction under this indictment."

The judge charged the jury that "cocaine base crack is an isomer of cocaine hydrochloride. Therefore, if you find from the evidence, and beyond a reasonable doubt, that the conspiracy was to possess and distribute cocaine in any form, then that would be sufficient to satisfy the Government's burden as to the controlled substance." The jury's verdict form gave the jury the option of choosing "guilty" or "not guilty" of "the crime charged in the Indictment." The jury found both defendants guilty.

5

At sentencing, the district court gave Peaks' counsel ample opportunity to argue all of his objections to the amount of cocaine calculated in the Pre-Sentencing Report. The district court had read the entire record twice and taken detailed notes in preparation for the sentencing hearing.

With regard to one of Peaks' objections, the judge reduced the amount of attributable cocaine. The district court held that Kearney's affirmative answer to the question, "do you recall making a statement . . . that the total [amount of cocaine] that you purchased from Mr. Allen or Mr. Peaks was approximately 30 to 35 ounces?," was not substantive evidence. Instead of 30-35 ounces, the judge attributed 22 ounces to Peaks from that transaction.

The district court found, "[A]s to Mr. Peaks I can only find him as a delivery person in this, and I can't find other participation." When asked whether he was satisfied with the district court's final calculation of 623.7 grams of cocaine, Peaks' counsel responded, "Yes, sir."

At the conclusion of these proceedings, the district court sentenced Allen to 189 months in prison and Peaks, 74 months. While sentencing the defendants, the judge commented that although there was sufficient evidence to sentence them under the more stringent crack cocaine guidelines, he decided to sentence them under the powder cocaine guidelines. Both defendants appealed.

II.

The decision whether to give a jury instruction and the content of an instruction are normally reviewed for an abuse of discretion. See United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996). Even if a court erroneously uses or rejects a jury instruction, the verdict will be reversed only if the error is "prejudicial based on a review of the record as a whole." United States v. Ellis , 121 F.3d 908, 923 (4th Cir. 1997).

With regard to constructive amendment, however, this Court considers a constructive amendment of the indictment to be reversible error per se. If we find a constructive amendment, we are required "to

6

conclusively presume that the defendant has been prejudiced by the constructive amendment and to forgo harmless error analysis." United States v. Floresca, 38 F.3d 706, 711 (4th Cir. 1994) (en banc). Although most of our sister Circuits appear to agree that constructive amendment is reversible error per se, see id. at 711 n.12 (collecting cases), at least one Circuit, the Fifth Circuit, is in disagreement. See United States v. Fletcher, 121 F.3d 187, 193 & n.4 (5th Cir. 1997) (declining to adopt a per se rule).

With regard to sentencing, this Court reviews the district court's findings as to the quantity of drugs attributable to a particular defendant for clear error. See United States v. Williams, 986 F.2d 86, 90 (4th Cir. 1993).

This Court has jurisdiction pursuant to 28 U.S.C.A.§ 1291 (West 1993) because this case is an appeal of a final decision of the district court.

III.

We begin by reviewing Peaks' claim that his indictment was constructively amended during trial. A constructive amendment occurs when the prosecution (usually through trial evidence or argument) or the court (usually through jury instructions) so alters the terms of the indictment that there is a substantial likelihood that the defendant was convicted of an offense other than that charged in the indictment, in violation of the Fifth Amendment right to grand jury indictment and the Sixth Amendment right to notice to prepare a defense. See Floresca, 38 F.3d at 710. If a constructive amendment has occurred, it is irrelevant whether, given the evidence before it, the jury could have convicted the defendant of the charge in the original, narrower indictment, as well as in the amended, broader indictment. Id. Yet, despite the importance of preserving to the grand jury the power of indictment, not all technical changes of an indictment constitute constructive amendments. "Unnecessary" parts of the indictment that are "merely surplusage . . . may be rejected" without constructively amending the indictment. United States v. Miller , 471 U.S. 130, 136-37 (1985).

The facts clearly establish that a technical change of the indictment occurred in this case. There is no question that the indictment was lit-

7

erally amended by the judge. The indictment alleged only conspiracy to distribute crack cocaine, yet the judge instructed the jury that they could find the defendants guilty of conspiracy to distribute either crack or powder cocaine. The only question before us is whether this technical change altered a portion of the indictment necessary to the offense proved.

To address this question, we must determine whether§ 846 distinguishes between powder or crack cocaine for the purposes of liability. If it does, then the change altered a necessary portion of the indictment, thereby constructively amending the indictment. If it does not, then the change altered an unnecessary portion of the indictment and no constructive amendment occurred. Since we find that § 846 does not distinguish between powder or crack cocaine for the purposes of liability, we hold that the indictment was not constructively amended.

Conspiracy under § 846 does not proscribe the possession or distribution of particular drugs by itself but rather must be charged in conjunction with another statutory provision,[2] in this case, § 841(b)(1)(A). Section 841(b)(1)(A) proscribes "cocaine, its salts, optical and geometric isomers, and salts of isomers."[3] It is undisputed

_____

[2] Section 846 reads:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C.A. § 846 (West 1981 & Supp. 1999).

[3] Section 841(b)(1)(A) reads in relevant part:

> (b) Penalties

> Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

> (1)(A) In the case of a violation of subsection (a) of this section involving--

\* \* \*

> (ii) 5 kilograms or more of a mixture or substance containing a detectable amount of--

that § 841 criminalizes both powder and crack cocaine. Conspiracy under §§ 841(b)(1)(A) and 846 only requires proof of some controlled substance under § 841 and not proof of a particular substance for purposes of liability.[4] The disparity between cocaine powder and crack

_____

> (I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;
>
> (II) cocaine, its salts, optical and geometric isomers, and salts of isomers;
>
> (III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or
>
> (IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);
>
> (iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

* * *

> such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both.

21 U.S.C.A. § 846 (West 1981 & Supp. 1994).

[4] **See Edwards v. United States**, 118 S.Ct. 1475, 1477 (1998) (holding that the determination of the identity and amount of controlled substance under §§ 841(b)(1)(A) and 846 is for the judge at sentencing and not the jury at trial); United States v. Rutherford, No. 96-4520, 1999 WL 300783, at *6; 1999 U.S. App. LEXIS 9038, at *19 (11th Cir. May 13, 1999) (holding that there was no constructive amendment where a §§ 841(b)(1)(A) and 846 indictment charged an offense involving "cocaine" and the proof at trial and jury instructions referred to crack cocaine); United States v. Mejia, 97 F.3d 1391, 1392-93 (11th Cir. 1996) (proof of §§ 841(b)(1)(A) and 846 conspiracy does not require proof of

in the indictment, evidence at trial, and jury instructions was irrelevant for the purposes of liability because both powder and crack cocaine are controlled substances under § 841(b)(1)(A). Conspiracy under § 846 does not distinguish between powder or crack cocaine for liability. The technical change of Peaks' indictment, therefore, was not a constructive amendment.

IV.

Even if an indictment is not constructively amended, there still may be a variance between the offense charged in the indictment and the proof offered at trial. See United States v. Ford, 88 F.3d 1350, 1360 (4th Cir. 1996). Whereas constructive amendment is largely a question of law (focusing upon the elements of the offenses charged and proved), variance is largely a question of fact (focusing upon the actual evidence presented at trial). Unlike a constructive amendment, a variance does not legally amend the terms of the indictment or modify an essential element of the charged offense, but rather occurs when facts are proven at trial materially differently than those alleged in the indictment.

A variance is "fatal," requiring reversal, only upon a showing of prejudice. A variance is prejudicial if there is either (1) a lack of notice in violation of the Sixth Amendment where "the indictment does not fairly appraise the defendant as to the charges," or (2) a Fifth Amendment double jeopardy violation where "the defendant is not protected from subsequent prosecutions for the same crime." United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991), citing Miller, 471 U.S. at 134-35.

Because Peaks failed to establish any prejudice, we need not address the question of whether an actual variance occurred. Peaks

_____

the particular substance involved, only that some controlled substance was involved); United States v. Patterson, 38 F.3d 139, 143-44 (4th Cir. 1994) (observing that § 841(b)(1)(A) is a "sentencing enhancement provision" and not a necessary element of liability); United States v. Gomez, 905 F.2d 1513, 1514 (11th Cir. 1990) (holding that a defendant need not be found to know the particular drug involved in order to receive a mandatory sentence based on the kind of drug under § 841(b)(1)).

10

did not suffer any prejudicial lack of notice because his trial strategy, impeaching the credibility of the government's "flipper" witnesses, was not dependent upon the identity of the substance charged. Moreover, there is no risk of any prejudicial double jeopardy. We hold, therefore, that there was no prejudicial variance.

V.

Finally, Peaks argued that the district court erred in attributing 623.7 grams of cocaine to him at sentencing because the amount was not within the "scope of his agreement" with Allen. We conclude that the district court's calculations of the relevant drug quantities were not clearly erroneous.

At sentencing, the government need only prove relevant drug quantities by a preponderance of the evidence. See United States v. Engelman, 916 F.2d 182, 184 (4th Cir. 1990). In a drug conspiracy, a defendant will be held accountable for a co-conspirator's drugs if the drugs were within the scope of their agreement and reasonably foreseeable to the defendant. See United States v. Irvin, 2 F.3d 72, 77 (4th Cir. 1993). It is within the power of the sentencing judge to approximate the relevant quantity of narcotics when the drugs seized are not an accurate indicator of the scope of an ongoing conspiracy, or when no drugs are in fact seized. See United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994).

A review of the evidence in the instant case suggests that the district court's calculation of the drugs attributable to Peaks was not clearly erroneous. The district court carefully calculated the quantities of drugs involved. The court not only addressed each and every one of counsel's objections, but also made independent inquiries as well. The court carefully read over the entire record twice and had made detailed notes. In one instance, the district court discounted the government's cross-examination of Kearney and reduced the amount from 30-35 ounces to 22 ounces. When asked whether he was satisfied with the final calculations, Peaks' counsel replied that he was satisfied. Given the deferential scope of our review, we find no error in the district court's calculations.

11

VI.

Finding no error in the proceedings below, we affirm the judgment and sentencing of the district court with regard to defendant Peaks. As previously discussed, this case is remanded to the district court to vacate the judgment and dismiss the indictment with regard to defendant Allen.

AFFIRMED IN PART AND REMANDED IN PART

12