**SHEET METAL DIVISION OF CAPITOL DISTRICT SHEET METAL, ROOFING & AIR CONDITIONING CONTRACTORS ASSOCIATION, INC.; The Associated Sheet Metal and Roofing Contractors of Connecticut; And Sheet Metal Contractors Association of Northern New Jersey, Plaintiffs–Appellees,**

v.

**LOCAL 38 OF THE SHEET METAL WORKERS INTERNATIONAL ASSOCIATION; and Sheet Metal & Roofing Employers Association of Southeastern New York, Inc., Defendants–Appellants.**

Docket Nos. 99–7393(L), 99–7437(CON)

United States Court of Appeals, Second Circuit.

Argued: Oct. 25, 1999

Decided: March 21, 2000

Jeffrey S. Dubin, Huntington, NY, for Defendant–Appellant Local Union 38 of the Sheet Metal Workers International Association.

Anthony A. Asher, Southfield, MI (Sullivan, Ward, Bone, Tyler & Asher, P.C., Ronald S. Lederman, of Counsel), for Defendant–Appellant Sheet Metal & Roofing Employers Association of Southeastern New York, Inc.

James J. Barriere, Albany, N.Y. (Couch White, LLP, Leslie F. Couch, of Counsel), for Plaintiffs–Appellees Sheet Metal Division of Capitol District Sheet Metal, Roofing & Air Conditioning Contractors Association, Inc.; The Associated Sheet Metal and Roofing Contractors of Connecticut; and Sheet Metal Contractors Association of Northern New Jersey.

Before: FEINBERG, OAKES, and POOLER, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiffs-appellees brought this action alleging that a provision of defendants-appellants' current three-year collective bargaining agreement violated the Sher-

man Antitrust Act, 15 U.S.C. §§ 1, 2 (the Sherman Act); the National Labor Relations Act (the NLRA), 29 U.S.C. §§ 158(b)(4)(B) and 158(e), and the antitrust statutes of New York, New Jersey, and Connecticut. The United States District Court for the Northern District of New York (Thomas J. McAvoy, C.J.) granted plaintiffs-appellees' motion for a declaratory judgment, and denied defendant-appellants' motion to dismiss the complaint. See Memorandum–Decision and Order dated March 24, 1999. Because too many of the facts in this case remain unresolved, and because the district court made several errors of law, we reverse and remand.

## I. Background

### A. The collective bargaining agreement

The focus of this appeal is a provision in a July 1998 collective bargaining agreement (the Agreement), between defendant-appellant Local Union 38 of the Sheet Metal Workers International Association (Local 38) and defendant-appellant Sheet Metal and Roofing Employers Association of Southeastern New York, Inc. (SENY Contractors). Local 38 is an unincorporated association of union sheet metal workers in several counties north of New York City (Westchester, Putnam, Dutchess, Orange, Rockland, Sullivan, and Ulster) and two counties in Connecticut (Fairfield and Litchfield). SENY Contractors is a multi-employer bargaining agent that represents sheet metal contractors in the counties covered by Local 38. SENY Contractors fabricate and install sheet metal duct work and related sheet metal products.

Plaintiffs-appellees Sheet Metal Division of Capitol District Sheet Metal, Roofing & Air Conditioning Contractors Association, Inc., Associated Sheet Metal and Roofing Contractors of Connecticut, and Sheet Metal Contractors Association of Northern New Jersey are multi-employer bargaining agents that represent union sheet metal contractors in, respectively, counties in upstate New York outside Local 38's jurisdiction, Connecticut, and New Jersey. Because plaintiffs-appellees represent contractors in counties outside Local 38's jurisdiction, we shall refer to them as the "Outside Contractors." Like the SENY Contractors, the Outside Contractors fabricate and install sheet metal duct work.

On June 30, 1998, the day before the Agreement between Local 38 and SENY Contractors was to go into effect, the Outside Contractors brought suit contending that a clause in the Agreement violates the Sherman Act, the NLRA, the Donnelly Act, N.Y. Gen. Bus. Law § 340; the Connecticut Antitrust Act, Conn. Gen.Stat. § 35–26, and the New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9–3. The clause in question (hereafter "the Clause") provides:

> To protect and preserve for the Building Trades employees covered by this Agreement all work they have performed and all work covered by the Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of work; it is agreed that all the work requiring sketching and fabrication shall be performed by employees hereunder, either in the shop or on the job site within the geographical jurisdiction of [Local 38].

Agreement, Art. II, § 1. The Clause does not prohibit contractors from outside Local 38's jurisdiction from contracting to work on projects within Local 38's jurisdiction, but it does require that any sketching or fabrication work for such projects be performed by Local 38's members.

Defendants Local 38 and SENY Contractors characterize this provision as a work preservation clause. They explain that because Local 38's jurisdiction includes an area with a relatively high cost of living, the wages and fringe benefits paid by SENY Contractors are among the highest in the country. Contractors outside Local 38's jurisdiction pay roughly $12.00 per hour less to their employees

than the SENY Contractors, who work in Local 38's jurisdiction. This disparity has led contractors within Local 38's jurisdiction to consider moving their shops out of Local 38's area to take advantage of the lower rates, performing their fabrication work at off-site shops rather than at job sites within Local 38's jurisdiction. Local 38's parent union typically advised its affiliates to negotiate a wage equalization clause, which required that when fabrication work was done in one area (outside of Local 38's jurisdiction) and installed in a different area (within Local 38's jurisdiction), the contractor would pay its employees the higher wage rate of the two areas.

Local 38, however, believed that such a clause did not achieve the desired effect because non-local contractors either did not have similar clauses in their collective bargaining agreements, or were apparently able to ignore such a clause if it was in their agreements. Under these circumstances, contractors in Local 38's jurisdiction would still be tempted to move out of Local 38's area to take advantage of the lower rates to bid on work that might otherwise be performed by Local 38 members. Thus, appellants Local 38 and SENY Contractors argue, they negotiated the Clause at issue in this case, which requires contractors in Local 38's jurisdiction to have fabrication work done by employees within Local 38's jurisdiction. The prior version of the Clause prohibited contractors in Local 38's jurisdiction from using outside subcontractors to do any work "normally handled" by Local 38. Local 38 and SENY Contractors maintain that the Clause binds only those contractors who are parties to the Agreement (the SENY Contractors), and that they never intended to try to enforce the Clause directly against outside contractors.

The Outside Contractors contend that the Clause imposes an unlawful boycott of sheet metal products fabricated outside Local 38's jurisdiction. They claim that they have supplied sheet metal duct work for projects located within Local 38's juris-

diction for over 40 years. If the Clause is permitted to go into effect, the Outside Contractors maintain, they will lose business opportunities in the millions of dollars. The Outside Contractors assert that the Clause binds them, even though they are not parties to the Agreement, because the terms of their own collective bargaining agreements require them to comply with Local 38's work rules when performing work for projects in Local 38's jurisdiction.

**B. District court and National Labor Relations Board proceedings**

As already noted, the Outside Contractors filed their complaint on June 30, 1998, seeking injunctive relief and a declaratory judgment. On July 10, 1998, counsel for defendant SENY Contractors filed a charge with the National Labor Relations Board (NLRB), asserting that the Clause violated the NLRA. The SENY Contractors say they filed the charge to "verify the validity of the work preservation provision" under the NLRA. On September 3, 1998, the Regional Director of the NLRB, in Hartford, Connecticut, refused to issue a complaint in the matter, stating:

> [T]he investigation failed to establish that [Local 38] violated Section 8(e) of the [NLRA]. . . . [T]he investigation disclosed that the fabrication work at issue has traditionally been performed within the jurisdiction of Local 38. Moreover, there is no evidence that employers outside the jurisdiction of Local 38 have entered into the agreement containing the clause in dispute, or that Local 38 has attempted to enforce the clause against nonsignatory employers. Under such circumstances, the clause seeks to protect shop fabrication work traditionally performed within the jurisdiction of Local 38 rather than to obtain work not previously performed within its jurisdiction. *National Woodwork Manufacturers Association v. NLRB,*

386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967).

Letter of Peter B. Hoffman, Regional Director, National Labor Relations Board Region 34 (Hartford, CT), to Anthony A. Asher, Esq. (Sept. 3, 1998) ("NLRB Letter").

While the charge was pending with the NLRB, the Outside Contractors moved in the district court on July 31, 1998 for a preliminary injunction, contending that they would lose work on construction projects once the Clause went into effect. On September 14, 1998, after the Regional Director of the NLRB ruled that the Clause was valid, Local 38 moved to dismiss the complaint in the district court, pursuant to Fed.R.Civ.P. 12(b)(6). In his March 1999 decision, the district judge granted the Outside Contractors' request for a declaratory judgment, thereby mooting the motion for a preliminary injunction, and denied Local 38's motion to dismiss the complaint. The district court concluded that (1) the Clause implemented an unfair labor practice that violated § 8(e) of the NLRA; and (2) the Clause did not fall within any recognized labor law exemption to the antitrust prohibitions of the Sherman Act, and constituted an unlawful restraint of trade. This appeal followed.

## II. Discussion

### A. Declaratory judgment standard

 The central question posed by this appeal is whether the record was sufficient to support a declaratory judgment for the Outside Contractors. The Declaratory Judgment Act authorizes any federal court to render declaratory judgments in any "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a) (1994). " '[I]t is well-settled that the trial court's decision to exercise declaratory jurisdiction is a discretionary one.' " *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir.1969) (quoting *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir.1968)). Accordingly, the district

court's grant of a declaratory judgment may be reversed only for an abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 2144, 132 L.Ed.2d 214 (1995); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir.1996). A district court's conclusions of law are subject to de novo review. See, e.g., *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 360 (2d Cir.1999) (citations omitted).

### B. National Labor Relations Act Claim

#### 1. The legal framework

 The Outside Contractors argue that the Clause violates § 8(e) of the NLRA. Section 8(e) provides:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforc[ea]ble and void....

29 U.S.C. § 158(e). As this court recently explained in *Bermuda Container Line Ltd. v. International Longshoremen's Ass'n*, 192 F.3d 250 (2d Cir.1999), § 8(e) does not prohibit "primary" clauses that are " 'addressed to the labor relations of the contracting employer vis-a-vis his own employees.' " *Id.* at 256 (quoting *National Woodwork Mfrs. Ass'n v. National Labor Relations Bd.*, 386 U.S. 612, 645, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967)). Agreements that are lawful under § 8(e) are "(1) aimed at preserving work that union-represented employees in the bargaining unit traditionally perform, and (2) directed at work over which the contracting employer has control." *Bermuda Container*, 192 F.3d at 256 (citation omitted). In contrast, section

8(e) prohibits agreements that are "secondary" in nature, in that they seek "to satisfy union objectives elsewhere." *R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89–22–1*, 33 F.3d 145, 154 (2d Cir.1994). Thus, § 8(e) would prohibit agreements between unions and employers to boycott the goods or services of other employers that do not comply with union standards. See *Local 210, Laborers' Int'l Union of N. Am. v. Labor Relations Div. Associated Gen. Contractors of Am.*, 844 F.2d 69, 79–80 (2d Cir.1988).

In *National Woodwork*, the Supreme Court set forth the test for evaluating whether the clause in question is a proper work preservation clause or serves an impermissible secondary purpose:

[W]hether, under all the surrounding circumstances, the [u]nion's objective was preservation of work for [the primary employer's] employees, or whether the agreements and boycott were tactically calculated to satisfy union objectives elsewhere.... The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-à-vis his own employees.

*National Woodwork*, 386 U.S. at 644–45, 87 S.Ct. 1250; see also *National Labor Relations Bd. v. International Longshoremen's Ass'n*, 473 U.S. 61, 81, 105 S.Ct. 3045, 87 L.Ed.2d 47 (1985) (explaining that collective bargaining agreement cannot seek "to achieve union objectives outside the primary employer-employee relationship"); *Bermuda Container*, 192 F.3d at 256 (same).

The Outside Contractors contend that the Clause in this case, see *supra* Section I.A, serves the secondary purpose of imposing a boycott on all sheet metal duct work fabricated outside Local 38's jurisdiction, and is thus a prohibited "hot cargo"

clause. See *Perlman*, 33 F.3d at 151 ("The goods agreed not to be handled are therefore rendered 'too hot to handle,' and such a forbidden agreement is aptly called a 'hot cargo' agreement.") (citations omitted). The district court agreed, reasoning that the effect of the Clause was not to preserve work traditionally performed by Local 38, but to impose a boycott on work performed by the Outside Contractors. The district court concluded that the Clause was not a valid work preservation clause because it retaliated for the perceived loss of work and decreased wages paid by local contractors as a result of the Outside Contractors' alleged noncompliance with the prior wage equalization provision. Consequently, the district court held, the Clause violated § 8(e) of the NLRA.[1]

2. Reasons for remand

As will be seen below, there are simply too many unanswered questions raised by this record for us to endorse the district court's conclusions, which, in the absence of any evidentiary hearing, were apparently reached as a matter of law.

a. History and purpose of the Clause

First, Local 38 and the SENY Contractors provided significant evidence regarding the history and purpose of the Clause suggesting that its purpose was work preservation for SENY Contractors' employees within Local 38's jurisdiction, and therefore not improper. Local 38 stated that it "insisted upon the inclusion in the next contract of a work preservation clause to insure that employers do not move their businesses and shops out of Local 38's area." Affidavit of Gino Colombo, Sept. 10, 1998, ¶ 18, at 5. SENY Contractors explained that the Clause was negotiated in response to technological changes in fabrication of sheet metal duct

---

1. The district court also concluded that the construction industry exemption to § 8(e) of the NLRA did not apply because the effect of the Clause is not limited to work "done at the site of the construction." 29 U.S.C. § 158(e). Both Local 38 and the SENY Contractors assert that they do not rely on this specific exemption, and we do not address this issue.

work. One contractor explained that while duct work was traditionally fabricated at the job site, this process had gradually been moved to off-site shops, so that there was no longer any guarantee that sheet metal duct work installed at a site within Local 38's jurisdiction would have been sketched and fabricated by employees in Local 38's jurisdiction. See Affidavit of Richard Lomas, Sept. 15, 1998, ¶¶ 4–6, at 2–3. The district court apparently concluded as a matter of law that defendants had to show that the work preservation clause was negotiated in response to technological change. We believe that the district court erred in this respect. See *Berman Enters. v. Local 333, United Marine Div., Int'l Longshoremen's Ass'n*, 644 F.2d 930, 937 (2d Cir.1981). In any event, as already noted, defendants did provide evidence that the Clause was negotiated in response to technological change.

Furthermore, Local 38 and SENY Contractors made a strong evidentiary showing that the work in question had traditionally been performed by Local 38 members. Local 38 asserted that between 1985 to 1997, anywhere from 75% to 95% of the fabrication work in Local 38's jurisdiction was done by local contractors. The district court inferred from these statistics that the Clause "obtains work performed by plaintiffs—and not, as Local 38 contends, work that was traditionally performed by local contractors within the union's jurisdiction." Yet, these statistics clearly support an inference that the aim of the Clause is to ensure that Local 38 members continue to perform 75% to 95% of the work performed in their jurisdiction, or even to get back work that they had performed before. We believe that the district court erred in concluding that Local 38 members have not "traditionally" performed this work because the Outside Contractors performed anywhere from 5% to 25% of the fabrication work. In *National Woodwork*, the Supreme Court held valid a work preservation clause prohibiting the use of precut doors fabricated by outside contractors, which amounted to one-third of the doors shipped to the local union's jurisdiction. See *National Woodwork*, 386 U.S. at 645–46, 87 S.Ct. 1250; *American Boiler Mfrs. Ass'n v. National Labor Relations Bd.*, 404 F.2d 547, 551 n. 7 (8th Cir.1968). That the members of the local union in that case performed 66% of the work, rather than 75% to 90%, did not mean they did not "traditionally" perform it.

Without more extensive development of the record, the district court could not properly determine what the effects of the Clause would be, either on the Outside Contractors or on unions outside Local 38's jurisdiction. Defendants claim that the Clause prevents the Outside Contractors from fabricating sheet metal work outside Local 38's jurisdiction and then bringing the work to the construction site. However, the Clause does not prevent the Outside Contractors from either setting up shop in Local 38's jurisdiction to do fabrication work there or hiring a local contractor to do fabrication work. Thus, defendants argue, the Clause does not effect a complete boycott on all work performed by Outside Contractors in Local 38's jurisdiction.

b. Intent to enforce the Clause

Similarly, the record indicates that there were considerable factual disputes over defendants' intention to enforce the Clause against anyone except defendant SENY Contractors and their members. The Outside Contractors explain that they are bound by the Clause under certain provisions in their own collective bargaining agreements with local unions (other than Local 38) of the Sheet Metal Workers International Association. These provisions, the Outside Contractors argue, require them to comply with Local 38's work rules when performing work for projects in Local 38's jurisdiction; Article VIII, § 6 of their own collective bargaining agreements, which is the same in each of the

Outside Contractors' agreements, provides that work to be performed in other jurisdictions must be compensated at wage levels equal to those of the jurisdiction in which the work is performed, and that the employer "shall be otherwise governed by the established working conditions of that Local Agreement." However, the Outside Contractors voluntarily agreed with the local unions representing their own employees to Article VIII, § 6 in their own agreements. On this record, we do not see why the Outside Contractors should be able to invalidate a provision in a collective bargaining agreement reached between two other parties (Local 38 and SENY Contractors), rather than simply renegotiate their own collective bargaining agreements with the local unions in their geographical areas, or file an unfair labor practice charge with the NLRB asserting that they were forced to sign a contract containing an "illegal" clause.

Local 38 and the SENY Contractors maintain that their collective bargaining agreement applies only to signatories, and that there was never any intent by Local 38 to enforce the Clause against nonsignatories like the Outside Contractors.[2] Consistent with the interpretation of the Clause advanced by SENY Contractors and Local 38, the record does not indicate that, before the district court issued its opinion, the Clause had been enforced against any of the Outside Contractors. Indeed, the prior version of the Clause, which contained a more stringent prohibition on subcontracting, also was apparently never enforced against the Outside Contractors. It is therefore hard to see how the likelihood that the Clause would be directly enforced against the Outside Contractors was sufficiently concrete to warrant a declaratory judgment. The district

court should have considered whether the Outside Contractors challenged the prior version of the Clause, in determining whether the Outside Contractors were entitled to discretionary relief.

The district court believed that a stipulation between Local 38 and plaintiffs Sheet Metal Contractors Association of Northern New Jersey and Bonland Industries, Inc., dated October 21, 1998, and approved by the district court on November 6, 1998 (the Stipulation), was evidence of defendants' intent all along to enforce the Clause against the Outside Contractors. The Stipulation states that:

> [I]f the Court denies plaintiffs' motion for a preliminary injunction or does not enter a permanent injunction against Local 38 or denies declaratory relief to plaintiffs, or five months after the date that one of the said contractors allegedly violates Article II, Section 1 of the Agreement, whichever event occurs first, then Local 38 may file an unfair labor practice charge with the National Labor Relations Board. . . .

Local 38 contends that it intended to enforce the Clause against the Outside Contractors only because, in the course of this litigation, the Outside Contractors insisted that the Clause directly applied to them. The Stipulation itself does not answer the question of whether Local 38 would have enforced the Clause against the Outside Contractors in the absence of the litigation they brought.

### c. The NLRB proceedings

Finally, it is not clear, based on the record before the district court, that it gave proper weight to the NLRB's determination that the Clause did not violate § 8(e) of the NLRA.[3] The NLRB's assess-

---

2. The Outside Contractors argue that, "[r]ather than file a grievance against the suspected [Outside Contractors], the appellant union [Local 38] relies on [the Clause] to keep all outside union employers' products out of its jurisdiction." It is not clear from the record how Local 38, which is not a signatory to the

Outside Contractors' agreements with their unions, could file a grievance against them under those agreements.

3. The district court apparently construed the filing, by one of the defendant SENY Contractors, of an unfair labor practice charge with

ment of whether a practice constitutes an unfair labor practice is typically entitled to "[a]ppropriate deference." *Silverman v. Major League Baseball Player Relations Comm.*, 67 F.3d 1054, 1059 (2d Cir.1995). The district court accorded the NLRB's decision no weight at all for the stated reason that the Outside Contractors "were not afforded an opportunity to participate in the NLRB proceedings or litigate the merits of that charge."

Yet counsel for SENY Contractors asserted, both at oral argument before the district court and before this Court, that he personally arranged service of the NLRB filing upon the Outside Contractors. The Outside Contractors did not deny that they received notice, and it was legal error on this record for the district court to conclude that the Outside Contractors lacked notice. The Outside Contractors claimed before the district court that they were not contacted as part of the NLRB's investigation, and that they were not a party to the NLRB proceedings, but the record does not reveal whether this lack of involvement was intentional. The district court should determine, on remand, whether the Outside Contractors had notice and an opportunity to participate in the NLRB proceedings and, if they had, what effect those proceedings should be given in this case.

In sum, on this record, entry of a declaratory judgment for the plaintiff Outside Contractors on the NLRA claim was premature and an abuse of discretion.

## C. Sherman Act claim

■ The Outside Contractors also alleged that by effecting a boycott of sheet metal duct work fabricated and sketched outside Local 38's jurisdiction, the Clause violates the Sherman Act. Section 1 of that act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or com-

merce." 15 U.S.C. § 1 (West 1997). In *Allen Bradley Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945), the Supreme Court established that "Congress never intended that unions could, consistently with the Sherman Act, aid non-labor groups to create business monopolies and to control the marketing of goods and services." See *id.* at 808, 65 S.Ct. 1533. Union-employer agreements may be exempt from antitrust scrutiny under the nonstatutory exemption to the Sherman Act, however, where the terms of the agreement are "so intimately related to wages, hours and working conditions that the union['s] successful attempt to obtain [a particular] provision through bona fide, arm's-length bargaining in pursuit of their own labor union policies ... falls within the protection of national labor policy." *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Jewel Tea Co.*, 381 U.S. 676, 689–90, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965); see also *Local 210*, 844 F.2d at 79–80; *Berman*, 644 F.2d at 935.

In this case, the question under the Sherman Act is analogous to the question under the NLRA: whether the Clause is a valid work preservation clause under *National Woodwork* or whether it is an impermissible restraint of trade under *Allen Bradley*. Defendants stress that *Allen Bradley* had nothing to do with work preservation. They strongly urge that: (1) there is no third party agreement, as there was in *Allen Bradley*, with any individual or group of general contractors; and (2) the plaintiff Outside Contractors are not barred from doing work in Local 38's jurisdiction. While the Outside Contractors argue that they are likely to lose business if the Clause is enforced, this is not enough to prove a violation of the Sherman Act. As this court has explained:

the NLRB as an admission by the SENY Contractors that they believed the Clause was invalid. To the contrary, the filing could indi-

cate a lack of collusion between Local 38 and the SENY Contractors.

Even a threat that the union involved might achieve monopoly status in the relevant labor market would not, standing alone, necessarily mandate antitrust liability. As long as this clause was embodied in a legitimate collective bargaining agreement, we believe that our primary touchstone in assessing its validity must be the policies embodied in federal labor law.

*Local 210*, 844 F.2d at 81 (citations omitted).

■ As set forth above, the record is not fully developed on: (1) the history and purpose of the Clause; (2) whether Local 38 intended to enforce the Clause against the Outside Contractors, rather than against the SENY Contractors with whom they had a collective bargaining agreement; and (3) the NLRB's determination that the Clause is similar to the clause the Supreme Court approved in *National Woodwork*. Furthermore, the district court's findings that the Clause has illegal anticompetitive effects are unsupported by evidence in the record if Local 38's principal intent was to preserve work that its members had traditionally performed. Just as the present record fails to support a declaratory judgment on the Outside Contractors' NLRA claim, so too does it fail to support a judgment on the Outside Contractors' Sherman Act claim.

### Conclusion

We conclude that the record was insufficient to support a declaratory judgment in favor of the Outside Contractors, particularly where that judgment, as the SENY Contractors put it, "upset the delicate balance of interests represented by collectively bargained agreements ... in the multiemployer context." We therefore remand this case for further proceedings consistent with this opinion.