*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0052P (6th Cir.)
File Name: 00a0052p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

Nos. 97-6493;
98-5019/5341/5343

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee/*
  *Cross-Appellant*
  *(98-5019/5343),*

   *v.*

ANDY L. SWINEY, JR.
(97-6493); GEORGIA BELLE
MULLINS, a/k/a Georgia B.
Isaacs (98-5341),
  *Defendants-Appellants/*
   *Cross-Appellees.*


Nos. 5011/5012/5015/
5016/5017/5018/5435

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

   *v.*

> Nos. 97-6493;
> 98-5011/5012/
> 5015/5016/5017/
> 5018/5019/5341/
> 5343/5435

1

RANDY GLENN ISAACS;                     !
RONNIE WAYNE ISAACS;                    !
JUAN DURAN-GUZMAN;                      !
VANESSA DALE BOOKER;                    !
WENDY MESSER; MICHAEL                   !
DAVID GUY; NELSON                       !
MILLETT,                               !
        *Defendants-Appellees.*    B


Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 97-00007—Thomas G. Hull, District Judge.

Argued and Submitted:  August 12, 1999

Decided and Filed:  February 14, 2000

Before:  NORRIS and SUHRHEINRICH, Circuit Judges;
            WEBER[*] , District Judge.

_____

**COUNSEL**

**ARGUED:** Dan R. Smith, ASSISTANT UNITED STATES
ATTORNEY, Johnson City, Tennessee, David L. Leonard,
LEONARD & KERSHAW, Greeneville, Tennessee, for
Appellants.  William L. Ricker, RICKER LAW OFFICE,
Greeneville, Tennessee, David B. Hill, Newport, Tennessee,
for Appellees. **ON BRIEF:** Dan R. Smith, ASSISTANT
UNITED STATES ATTORNEY, Johnson City, Tennessee,

_____

[*] The Honorable Herman J. Weber, United States District Judge for
the Southern District of Ohio, sitting by designation.

Clifton L. Corker, Johnson City, Tennessee, David L.
Leonard, LEONARD & KERSHAW, Greeneville, Tennessee,
for Appellants. William L. Ricker, RICKER LAW OFFICE,
Greeneville, Tennessee, Laura D. Perry, PERRY & PERRY,
Morristown, Tennessee, C. Todd Chapman, KING & KING,
Greeneville, Tennessee, R.B. Baird III, LAW OFFICES OF
R.B. BAIRD III, Rogersville, Tennessee, Douglas L. Payne,
Greeneville, Tennessee, David B. Hill, Newport, Tennessee,
Dan R. Smith, ASSISTANT UNITED STATES
ATTORNEY, Johnson City, Tennessee, for Appellees.
Michael David Guy, Morgantown, West Virginia, pro se.

---

## OPINION

---

SUHRHEINRICH, Circuit Judge. Defendants Georgia
Belle Mullins and Andy Lee Swiney, two members of a
heroin conspiracy, appeal on various grounds their jury
convictions and sentences. The Government cross appeals
Mullins' and Swiney's sentences. The Government also
appeals the sentences of seven other Defendants who pleaded
guilty to conspiracy to distribute heroin.[1] The Government
argues that all of the Defendants should have received a
statutory mandatory minimum of twenty years pursuant to 21
U.S.C. § 841(b)(1)(C) and U.S.S.G. § 2D1.1(a) because a
death resulted from the use of heroin that was distributed by
members of the conspiracy. The district court found no proof
linking these Defendants to the death, using a "critical

---

[1] By order dated June 12, 1998, the Court consolidated for purposes
of briefing and submission the appeals filed by plaintiff, the United States
of America, Case Nos. 98-5011, 98-5012, 98-5015, 98-5016, 98-5017,
98-5018 and 98-5435. This Court also consolidated the appeals and
cross-appeals filed by Defendants Andy Swiney and Georgia Belle
Mullins and Plaintiff United States of America, Case Nos. 97-6493, 98-
5019, 98-5341 and 98-5343. Argument was set for the same day with the
same panel.

proximate cause" inquiry. The Government contends that all of the Defendants should be held accountable for the death under the *Pinkerton* theory of vicarious liability.[2]

We reject the Government's theory of accountability because the scope of conduct for which a defendant can be held accountable under the Sentencing Guidelines is narrower than the conduct encompassed by conspiracy law. However, we agree that the district court misapplied the Sentencing Guidelines. We therefore **REVERSE** and **REMAND** for further proceedings.

## I. Background

On January 22, 1997, a grand jury returned a twenty-four count indictment charging twelve individuals with conspiracy to distribute heroin in Mountain City, Tennessee and related drug charges. Included were Defendants Michael Isaacs; his ex-wife Georgia Belle Mullins; their sons, Ronnie, Randy, Johnny, and Stevie Isaacs; Andy Lee Swiney; David Guy; Wendy Messer; Vanessa Booker; Nelson Millet; and Juan Duran-Guzman.

Nine defendants pleaded guilty to the conspiracy charge, of whom seven now appeal. A jury convicted Michael Isaacs, Swiney, and Mullins of conspiracy and related charges.

## A. The Trial

The Government proved at trial that Michael Isaacs, the leader of the conspiracy, Mullins, Ronnie Isaacs, Randy Isaacs, and Swiney arranged for members of the conspiracy to travel from Mountain City to Philadelphia, Pennsylvania to purchase heroin from Defendants Nelson Millett and Juan Duran-Guzman, for resale in Mountain City. Michael Isaacs would then give the heroin to his distributors. Generally,

---

[2]*See Pinkerton v. United States,* 328 U.S. 640 (1945).

enhancement of 21 U.S.C. § 841(b)(1)(C) and U.S.S.G. § 2D1.1(a), the district court must find that he or she is part of the distribution chain that lead to Phillips' death. *Cf. Robinson*, 167 F.3d at 831 (observing that § 1B1.3(a)(1)(B) was satisfied where the defendant delivered drugs to a co-conspirator, who then in furtherance of the conspiracy delivered the drugs to a third party who died from use of the drugs; evidence showed that the defendant intended that the drugs be distributed, which "was the very purpose of the conspiracy" (dicta)).

Defendants' remaining arguments are without merit.

## III. Conclusion

For the foregoing reasons, the district court's ruling regarding 21 U.S.C. § 841(b)(1)(C) and U.S.S.G. § 2D1.1(a) is **REVERSED;** Defendants' sentences are **VACATED** and the cases are **REMANDED** for resentencing in accordance with this opinion.

Furthermore, we perceive no difficulty in reconciling the mandatory minimum language of § 841(b)(1)(C) and § 1B1.3(a)(1)(B). In fact, a number of circuits have applied the foreseeability analysis of the relevant conduct provision to the calculation of drug quantities for purposes of mandatory minimum sentences under 21 U.S.C. §§ 841(b)(1) and 846. *See, e.g., United States v. Ruiz*, 43 F.3d 985, 992 & n.16 (5th Cir. 1995); *United States v. Castaneda*, 9 F.3d 761, 769-70 (9th Cir. 1993); *Irvin*, 2 F.3d at 75-78; *United States v. Young*, 997 F.2d 1204, 1210 (7th Cir. 1993); *United States v. Martinez*, 987 F.2d 920, 923-26 (2d Cir. 1993); *United States v. Jones*, 965 F.2d 1507 (8th Cir. 1992). We adopt the reasoning of these courts. *See Irvin*, 2 F.3d at 78 (noting that "the guidelines were created pursuant to the Sentencing Reform Act of 1984, 28 U.S.C.A. §§ 991-998 (West Supp 1993) and that the individual guidelines, including the reasonable foreseeability test as set forth in the relevant conduct section, have been accepted by Congress. Thus, two distinct congressionally approved sentencing schemes, the mandatory minimum approach and the sentencing guidelines, are presently in place, two schemes that should be reconciled to the extent legitimate and practical."); *Martinez*, 987 F.2d at 925-26 (surveying legislative history 21 U.S.C. § 846, amended in 1988; holding that the Guidelines, in the tradition of conspiracy law since *Pinkerton*, require reasonable foreseeability for conspiracy liability; a result which is not inconsistent with § 846, which only requires that a conspirator be sentenced to the same penalty applicable to the underlying conduct). We therefore hold that *Pinkerton* principles, as articulated in the relevant conduct guideline, U.S.S.G. § 1B1.3(a)(1)(B), determine whether a defendant convicted under 21 U.S.C. § 846 is subject to the penalty set forth in 21 U.S.C. § 841(b)(1)(C).

On remand, the district court is directed to determine whether Johnny Isaacs' distribution of heroin was "reasonably foreseeable" as defined in U.S.S.G. § 1B1.3(a)(1)(B) and commentary to any of these Defendants. In other words, before any of the Defendants can be subject to the sentence

heroin customers would contact Mullins, who would have her sons Johnny Isaacs and Stevie Isaacs deliver the heroin.

Several of the pleading Defendants testified at the trial. Randy Isaacs, Guy, Booker, and Messer all attested to making trips to Philadelphia for Michael Isaacs to buy heroin for resale in Mountain City.

The Government also established that, as charged in Count 9 of the indictment, a death resulted from the conspiracy's sale of heroin. Chad Rankin testified that on September 14, 1996, he and his friend Kristopher Phillips traveled to Mountain City to buy heroin. Rankin indicated that he and Phillips bought five bags for $150. Both Phillips and Rankin used the heroin purchased, and Phillips died that night of a heroin overdose. Rankin testified that Johnny Isaacs sold them the heroin.

Michael Glenn Isaacs was convicted at trial of distributing heroin, aided and abetted by Johnny Isaacs. It is undisputed that Johnny's sale of heroin resulted in Phillips's death.

### B. The Plea Agreements

Ronnie Isaacs, Randy Isaacs, Guy, Messer, Booker, Duran-Guzman, and Millett each pleaded guilty to conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. In return, the Government agreed to move at sentencing for the dismissal of the additional counts in the indictment. Each of the pleading Codefendants stipulated to an "agreed factual basis" outlining his or her role in the conspiracy as part of his or her plea agreement.

Each plea agreement acknowledged the statutory sentencing range from a five-year minimum to a forty-year maximum and recited a factual basis for the plea detailing the particular misconduct of each Defendant. The stipulated facts indicate that each Defendant knew that he or she was part of an agreement to distribute heroin. None of the plea agreements or agreed factual bases for these seven Defendants referred to

the actual delivery of heroin to Kristopher Phillips or his death. None of the plea agreements referred to a mandatory minimum twenty years for a resulting death.

### C. Sentencing

Neither the presentence reports of the pleading Defendants nor Swiney's and Mullin's presentence reports enhanced the sentences to reflect the death. The Government objected to each of the reports, contending that a death resulted from the use of heroin distributed by members of the conspiracy. In addendums to the presentence reports, the probation officer acknowledged that Phillips died of a heroin overdose during the course of the conspiracy, but determined that enhancements under U.S.S.G. § 2D1.1(a)(2) were not appropriate.

The district court held Johnny Isaacs responsible for Phillips' death under § 841(b)(1)(C) and § 2D1.1. The district court refused to impose the heightened base offense level for any of the other Defendants, however, finding no proof linking the heroin which caused Kristopher Phillips' death to any of these nine defendants.

The Government challenges this ruling as applied to all nine Defendants before this Court. Although Swiney and Mullins raise other issues in their respective appeals, we find them without merit and in no need of further discussion.

### II. Analysis

### A. Standard of Review

Several of the Defendants challenge the Government's right to appeal, claiming that the sentences imposed were within the district court's discretion and within the Guidelines. However, the Government has a limited right to appeal an otherwise final sentence if the sentence was imposed as a result of an incorrect application of the Sentencing Guidelines. *See* 18 U.S.C. § 3742(b).

applying the enhanced sentence, the district court must find that death resulting from the use of a drug distributed by a defendant was a reasonably foreseeable event. . . . The statute puts drug dealers and users on clear notice that their sentence will be enhanced if people die from using the drugs they distribute. . . . Where serious bodily injury or death results from the distribution of certain drugs, Congress has elected to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death will result. We will not second-guess this unequivocal choice.

*Id.* at 145 (footnote omitted). The court also rejected the defendants' analogy to drug conspiracy cases, in which the defendants are sentenced according to the quantity of drugs reasonably foreseeable to each defendant as required under U.S.S.G. § 1B1.3(a)(1)(B). *See id.* at 145. *See also Robinson*, 167 F.3d at 830-31 (rejecting the defendant's argument the district court must find that the defendant's conduct was the proximate cause of a death before imposing the twenty-year mandatory minimum found in 21 U.S.C. § 841(B)(1)(C); relying on *Patterson's* "plain language" analysis).

We do not find *Patterson* persuasive. As the *Patterson* court itself pointed out, the defendants' conduct  – distributing, and aiding and abetting in the distribution of, morphine and meperidine  –  was encompassed within the subsection (A) of § 1B1.3(a)(1), which does not require a finding of reasonable foreseeability. *See id.* at 145-46.[8] Subsection (B) of § 1B1.3(a)(1) was not even at issue. Thus, *Patterson's* remarks are dicta.

---

[8]Subsection (A) includes as relevant conduct
   (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense.
U.S.S.G. § 1B1.3(a)(1)(A).

proximate cause" of the death. Under this test, the district court found no proof that any acts or omissions of these Defendants[6] were the proximate cause of Phillips' death.[7]

The district court erred in not applying the reasonable foreseeability analysis of U.S.S.G. § 1B1.3(a)(1)(B). The Government's position is somewhat closer to the mark because it employs *Pinkerton*. Yet it fails to limit the *Pinkerton* theory of liability in the sentencing context, as required by the Guidelines.

In support of its position the Government cites *United States v. Patterson*, 38 F.3d 139 (4th Cir. 1994). There, one of the defendants pleaded guilty to unlawful distribution of a controlled substance which resulted in a death, in violation of 21 U.S.C. § 841(a)(1), and the other defendant pleaded guilty to aiding and abetting in that offense, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). The defendants argued that the Government was required to prove that the death was the intended or foreseeable result of their distribution of controlled substances under 21 U.S.C. § 841(b)(1)(C). *See id.* at 144-45. The Fourth Circuit rejected the argument:

> Quite simply, the plain language of § 841(b)(1)(C) does not require, nor does it indicate, that prior to

---

feet thanks to phrases such as 'shall be unlawful,' . . . which draw a provision to its close.'" *Id.* (citations omitted).

Section 841, in contrast with § 2119, draws clear distinctions between the prohibited conduct, *see* 21 U.S.C. § 841(a), and the penalty. *See* § 841(b).

[6]Michael Isaacs died prior to sentencing, so the district court did not assess whether he would be subject to 21 U.S.C. § 841(b)(1)(C) and U.S.S.G. § 2D1.1(a).

[7]The district court derived this test from *United States v. Homrich*, 59 F.3d 171, 1995 WL 390286 (6th Cir. 1995) (unreported per curiam); *United States v. Nelson*, 920 F. Supp. 825 (M.D. Tenn. 1996); and *United States v. Patterson*, 38 F.3d 139 (4th Cir. 1994).

---

We review a sentencing court's interpretation of the Sentencing Guidelines and sentencing statutes de novo and its factual findings for clear error. *See United States v. Robinson*, 167 F.3d 824, 830 (3d Cir. 1999 ), *cert. denied*, 120 S. Ct. 118 (1999); *United States v. Flowers*, 55 F.3d 218, 220 (6th Cir. 1995) *United States v. Irvin*, 2 F.3d 72, 76 (4th Cir. 1993).

### B. Mandatory Enhancement

All of the Defendants before this court were convicted of conspiracy under 21 U.S.C. § 846, which provides: "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Here, the object of the conspiracy was possession with the intent to distribute heroin. *See* 21 U.S.C. § 841(a)(1). Thus, under § 846, Defendants are subject to the same penalties as a person who actually violates § 841. *See United States v. O'Brien*, 52 F.3d 277, 278 (9th Cir. 1995); *Irvin*, 2 F.3d at 75; *United States v. Montoya*, 891 F.2d 1273, 1293 (7th Cir. 1989).

Section 841(b) prescribes the penalty for violations of § 841(a). The district court sentenced Johnny Isaacs under § 841(b)(1)(C). It provides that "if death or serious bodily injury results from the use of such substance" distributed in violation of § 841(a)(1), such person "shall be sentenced to a term of not less than twenty years or more than life." 21 U.S.C.A. § 841(b)(1)(C) (West 1999). Further, U.S.S.G. § 2D1.1(a)(2) assigns a base offense level of 38 "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C) . . .[and] death or seriously bodily injury resulted from the use of the substance . . . . ." U.S.S.G.§ 2D1.1(a)(2) (1998).

The Government argues that under the *Pinkerton* doctrine all of the Defendants are responsible for Phillips' death. In

*Pinkerton v. United States*, 328 U.S. 640 (1946), the Supreme Court held that a co-conspirator may be vicariously liable for the substantive offense committed by coconspirator if the act is done "in furtherance of the conspiracy" and is "reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Id.* at 647-48; *United States v. Myers*, 102 F.3d 227, 237 (6th Cir. 1996); s*ee also* Paul Marcus, *Criminal Conspiracy Law: Time To Turn Back From An Ever Expanding Ever More Troubling  Area*, 1 Wm. & Mary Bill Rts. J. 1, 7 (1992) (observing that the *Pinkerton* theory is one of imputed causation; "it permits the government to hold a defendant criminally liable for all reasonably foreseeable acts of co-conspirators regardless of actual knowledge, intent, or participation"). Thus, if the Government is correct, all of the Defendants would be liable for Phillips' death because it is reasonably foreseeable that someone will die after using heroin distributed by the conspiracy.

The Government's argument ignores the Sentencing Guideline's treatment of conspiracy. U.S.S.G. § 1B1.3(a)(1)(B) ("Relevant Conduct (Factors that Determine the Guideline Range")) provides that the base offense level shall be determined by considering the following:

> [I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction.

U.S.S.G. § 1B1.3(a)(1)(B). Application Note 2 provides in relevant part:

> In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is

instances, make differing determinations among co-conspirators. If the *Pinkerton* rule of conviction liability were strictly mirrored at sentencing, the result might be different.

William W. Wilkins & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C. L. Rev. 495, 508-10 (1990).[4]  Thus, it is clear that the Sentencing Guidelines have modified the *Pinkerton* theory of liability so as to harmonize it with the Guidelines' goal of sentencing a defendant according to the "seriousness of the actual conduct of the defendant and his accomplices." *Id.* at 502.

The district court did not apply the Guideline test set out in U.S.S.G. § 1B1.3(a)(1)(B). Instead, it created its own test and held that in order for the enhancement to apply, the Government had to establish by a preponderance of the evidence[5] that the defendant's conduct was "the critical

---

[4]*See supra*, note 3.

[5]The district court held that 21 U.S.C. § 841(b) is an enhancement provision rather than a substantive offense. Although Defendants do not challenge this ruling on appeal, we nonetheless observe that *Jones v. United States*, 526 U.S. 227 (1999), does not require a different result. *Jones* involved the carjacking statute, 18 U.S.C. § 2119. Section 2119 states that a defendant convicted of carjacking shall be imprisoned not more than fifteen years and "if death results," be imprisoned for up to life. 119 S. Ct. 1218 (quoting the statute). In a 5-4 decision, the Supreme Court held that these factors (seriously bodily injury and death) were offense elements rather than sentencing factors. *See id*. at 1228. Significantly, the majority invoked the doctrine of "constitutional doubt" whereby a statute susceptible of two constructions should be interpreted to avoid "grave and doubtful constitutional questions." *Id*. at 1222-28 (quotations and citations omitted). The *Jones* majority emphasized two points. First, the carjacking statute was unlike "some statutes [that] come with the benefit of provisions straightforwardly addressing the distinction between elements and sentencing factors." *Id*. at 1219. Second, the carjacking statute was "unlike most offense-defining provisions in the federal criminal code, which genuinely stand on their own grammatical

Moreover, in a 1990 article, William W. Wilkins, Chairman of the United States Sentencing Commission, and John R. Steer, General Counsel for the Commission, explained:

> The remaining portion of the "otherwise accountable" definition in Application Note 1 refers to conspiratorial-type activity within the realm of what is commonly referred to as the "*Pinkerton*" rule. Two key points should be noted. First, the guidelines specifically employ this doctrine to cover any "criminal activity undertaken in concert with others, whether or not charged as a conspiracy."
>
> A second key point regarding construction of the "otherwise accountable" language in concerted activity situations is that this rule is a sentencing rule and not necessarily co-extensive with the *Pinkerton* rule of co-conspirator liability. Thus, in determining the outer limits of the attribution dimension under this aspect of Relevant Conduct, courts should focus on the language in Application Note 1 addressing conduct of others that was "within the scope of the defendant's agreement'" or "in furtherance of the execution of the of the execution of the jointly-undertaken criminal activity" or "that was reasonably foreseeable by the defendant . . . in connection with the criminal activity the defendant agreed to jointly undertake.'" As the note further explains, in a broad conspiracy the relevant conduct considered in constructing the guideline range may not be the same for every defendant in the conspiracy, although each may be equally liable for conviction under *Pinkerton*.
>
> This potential differentiation among co-conspirators is consistent with the multiple purposes of sentencing articulated in the Sentencing Reform Act. . . .
>
>      . . . .
> Thus, in applying the Relevant Conduct guideline, the Commission intended that courts would, in necessary

accountable for the conduct (acts and omissions) of others that was both:

> (i) in furtherance of the jointly undertaken criminal activity; and
> (ii) reasonably foreseeable in connection with that criminal activity.
>
> Because a count may be worded broadly and include the conduct of many participants over a period of time, *the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant*. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine *the scope of the criminal activity the particular defendant agreed to undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)*. The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.

*Id.* cmt. n.2. (emphasis added). In short, under the Sentencing Guidelines, a defendant is accountable for the conduct of other conspirators only if that conduct was (1) reasonably foreseeable to him and (2) in furtherance of the jointly undertaken criminal activity. *See United States v. Jenkins*, 4 F.3d 1338, 1346 (6th Cir. 1993) (interpreting prior version of § 1B1.3 and comment).

We have observed in an analogous context that "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Okayfor*, 996 F.2d 116, 120 (6th Cir. 1993) (quoting *United States v. Lanni*, 970 F.2d 1092, 1093 (2d Cir. 1992) (quoting *United States v. Perrone*, 936 F.2d 1403, 1416 (2d Cir. 1991)) (holding that for Sentencing Guidelines purposes, a defendant is chargeable for a co-conspirator's drug transactions if they were known to him or reasonably foreseeable to him under U.S.S.G. § 1B1.3(a)(1), 1B1.3, cmt. n.2))). In *Lanni*, which we cited with approval in *Okayfor*, the Second Circuit explained:

> As we previously have recognized, an important distinction exists between the criminal law standard for convicting a defendant of conspiracy and the Guidelines standard for sentencing a defendant convicted of conspiracy. Under conspiracy law, a defendant may be convicted of conspiracy even though he is unaware of all the conspiracy's unlawful aims, as long as he has knowledge of some of those aims. *See United States v. Lanza*, 790 F.2d 1015, 1022-23 (2d Cir.), *cert. denied*, 479 U.S. 861 . . . (1986). The Guidelines' approach is narrower than the standard for establishing guilt of the conspiracy offense itself. A defendant convicted of conspiracy may be sentenced for relevant conduct committed by a co-conspirator in furtherance of the conspiracy only if that conduct was reasonably foreseeable by the defendant. *See* Guidelines § 1B1.3, Application Note 1; *United States v. Perrone*, 936 F.2d 1403, 1416 (2d Cir. (footnote omitted), *clarified on other grounds*, 949 F.2d 36 (2d Cir. 1991).

*Lanni*, 970 F.2d at 1093. The concurring opinion in *Lanni* clarified the point:

> [I]n describing the narrower standard of guideline sentencing for conspiracy, [the majority opinion]

helpfully and precisely contrasts that standard with the broader standard applicable only to conviction for the conspiracy offense itself. When the relevant conduct guideline speaks of "all acts and omission . . . for which the defendant would be otherwise accountable . . . that otherwise were in furtherance of the offense," Sentencing Guidelines, § 1B1.3(a)(1), it calls to mind the *Pinkerton* standard, which holds a conspirator liable, in some circumstances, for substantive offenses committed by a co-conspirator. The Commission has apparently recognized the force of the *Pinkerton* analogy since it has limited sentencing for relevant conduct of "others in furtherance of jointly-undertaken criminal activity" to conduct that was reasonably foreseeable *"by the defendant." Id.*, comment. (n.1). *See United States v. Joyner*, 924 F.2d 454, 458-59 (2d Cir. 1991) (section 1B1.3 commentary reflects *Pinkerton* standard); *see also United States v. Andrews*, 953 F.2d 1312, 1319 (11th Cir. 1992) (section 1B1.3 standards "roughly approximate" *Pinkerton* standards), *cert. denied*, 505 U.S. 1210 . . . (1992).

The broader aspect of conspiracy law, permitting conviction of a defendant who knew some but not all the aims of the conspiracy, *see United States v. Lanza*, 790 F.2d 1015, 1022-23 (2d Cir.)*, cert. denied*, 479 U.S. 861 . . . (1986), applies only to conviction for the conspiracy offense itself, and not to vicarious liability for substantive offenses committed by a co-conspirator.

Id. at 1095 (Newman, J., concurring). **[3]**

---

**[3]** The court is discussing the pre-November 1, 1992 version of U.S.S.G. § 1B1.3. Certain material from the commentary was moved to the Guideline itself and "rephrased for greater clarity" in amendment 439. *See* Julie R. O'Sullivan, *In Defense of the U.S. Sentencing Guidelines' Modified Real-Offense System*, 91 NW. U. L. REV. 1342, 1433 n. 111 (1997); U.S.S.G. § 1B1.3, comment. (n.2) (1995); *United States v. Jenkins*, 4 F.3d 1338, 1346 (6th Cir. 1993).