NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0214n.06

Case Nos. 21-6165/6186

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>  Plaintiff-Appellee,<br><br>v.<br><br>WESLEY HAMM (21-6165); ROBERT<br>SHIELDS (21-6186),<br><br>  Defendants-Appellants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><strong>FILED</strong><br>May 04, 2023<br>DEBORAH S. HUNT, Clerk<br><br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY<br><br>O P I N I O N</td></tr>
</table>

Before: BOGGS, McKEAGUE, and THAPAR, Circuit Judges.

McKEAGUE, Circuit Judge. Defendants Wesley Hamm and Robert Shields were found guilty of conspiracy to distribute carfentanil and distribution of carfentanil. On the underlying distribution convictions, the jury applied the statutory sentencing enhancement under 21 U.S.C. § 841(b)(1)(C) for distribution resulting in death or serious bodily injury. On appeal, Hamm and Shields challenge the sufficiency of the evidence and the district court's jury instructions with respect to the application of the death-or-injury enhancement. Shields also challenges the district court's denial of his motions for severance and a mistrial. For the reasons set forth below, we affirm the district court's judgment as to both Defendants.

# I

## A. Factual Background

On August 24, 2016, Defendant-Appellant Wesley Hamm, his wife Jennifer Hamm, and their friend Matt Jones traveled from Mt. Sterling, Kentucky to Cincinnati, Ohio to purchase drugs from Defendant-Appellant Robert Shields. Hamm used money provided to him by his roommate and local drug dealer, Tracey Myers, to purchase what he thought was fentanyl. On their way back to Mt. Sterling, the Hamms and Jones ingested some of the purchased drugs. Neither Hamm nor Jennifer experienced any adverse effects, but Jones immediately became incoherent and unresponsive. Ultimately, however, Jones did not require medical attention and was able to drive himself home a few hours later.

Upon returning to Mt. Sterling, Hamm kept some of the drugs for himself and gave the rest to Myers. Later that evening, Myers sold drugs to a man we will call L.K.W. Within hours, L.K.W. overdosed and died. It is undisputed that L.K.W. died as a result of ingesting carfentanil[1] supplied to him by Myers.

Law-enforcement officers traced the drugs back to Myers, who confessed to having sold what she believed was heroin or fentanyl to L.K.W. Myers was arrested for drug trafficking. Police also arrested Hamm on outstanding warrants. Hamm admitted to buying what he believed to be fentanyl on August 24, 2016, and he identified Shields as his supplier. Investigators arranged a controlled buy between Hamm and Shields, and they arrested Shields upon his arrival. Shields admitted to having sold fentanyl on several occasions.

---

[1] "Carfentanil, a synthetic opioid, is similar in action to other opioids like fentanyl and morphine (a major component in heroin) but it is much more potent. At [the first] trial, the medical examiner testified that carfentanil was about '10,000 times stronger than morphine.'" *United States v. Hamm*, 952 F.3d 728, 735 (6th Cir. 2020).

Following her arrest, Myers smuggled drugs into the Montgomery County Jail. There, she provided these drugs to three of her female cellmates. All three women overdosed, but because jail personnel were able to promptly administer naloxone,[2] each survived. The women tested positive for carfentanil. Myers committed suicide one week later.

## B. Procedural History

A grand jury indicted Shields, Hamm, and Jennifer with conspiracy to distribute carfentanil, fentanyl, and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment also charged Shields and Hamm with separate counts of distributing carfentanil, "the use of which resulted in the overdose death of L.K.W." and in "serious bodily injury" to the three women in the Montgomery County Jail, in violation of § 841(a)(1), (b)(1)(C). R. 86, PID 430–33. Jennifer pled guilty to the conspiracy charge and received a 23-month sentence, but Hamm and Shields went to trial and were tried as codefendants. *Hamm*, 952 F.3d at 735–36.

At trial, the jury was instructed that it could find Hamm and Shields guilty of distributing carfentanil resulting in death or serious bodily injury by either finding that defendants "personally" distributed carfentanil, or that they were vicariously liable for Myers's distribution to L.K.W. under the *Pinkerton* doctrine. *Pinkerton v. United States*, 328 U.S. 640 (1946). Ultimately, the jury found Hamm and Shields guilty and convicted them both of one count of conspiracy to distribute controlled substances and two counts of distributing carfentanil. *See* 21 U.S.C. §§ 841(a)(1), 846. On the latter two counts, the jury applied the statutory sentencing enhancement under 21 U.S.C. § 841(b)(1)(C) for distribution resulting in death or serious bodily injury ("the death-or-injury enhancement"). This resulted in a mandatory minimum sentence of 20 years for Hamm and a

---

[2] Naloxone is "a medication that can temporarily reverse the effects of an opioid overdose." *Hamm*, 952 F.3d at 735.

mandatory life sentence for Shields, who had a prior felony drug conviction. *See id.* § 841(b)(1)(C). The district court sentenced Hamm to 35 years' imprisonment and Shields to life.

Hamm and Shields appealed their convictions and sentences. Among other things, they challenged the sufficiency of the evidence and the trial court's jury instructions on the § 841(b)(1)(C) sentencing enhancement. With respect to Hamm's and Shields's substantive distribution convictions, we held that a reasonable juror could have found that the carfentanil Myers sold to L.K.W. was the same substance that Shields sold to Hamm and that Hamm distributed to Myers. *Hamm*, 952 F.3d at 739. But with respect to the application of the death-or-injury enhancement to the defendants' sentences, we concluded that the district court's jury instructions misstated the law. *Id.* at 741. Although the jury could find Hamm and Shields liable for distribution under *Pinkerton*, applying the death-or-injury enhancement required more: the jury needed to find that Hamm and Shields were personally in the distribution chain for the same carfentanil Myers distributed to L.K.W. and her cellmates. *Id.* at 747. Accordingly, we affirmed Hamm's and Shields's convictions, but vacated their sentences and remanded for a new trial "solely on the question of whether to apply § 841(b)(1)(C)'s sentencing enhancement on the distribution counts." *Id.* at 734.

On remand, the government sought the § 841(b)(1)(C) sentencing enhancement only for L.K.W.'s death. It did not seek the enhancement for the serious bodily injury suffered by Myers's three cellmates. At trial, the district court explained to the jury that its role was only to decide whether Shields and Hamm were in the distribution chain for the same carfentanil that led to L.K.W.'s death. The jury ultimately found that Hamm and Shields were within the chain of distribution and returned a verdict applying the death-or-injury enhancement to Hamm's and Shields's underlying distribution convictions. The district court then sentenced Shields to 480

months' imprisonment with six years' supervised release and sentenced Hamm to 480 months' imprisonment with three years' supervised release. Hamm and Shields timely appealed.

## II

### 1. Sufficiency of the Evidence

Defendants contend that there was insufficient evidence presented by the government to support the jury's application of the death-or-injury enhancement. Specifically, Hamm and Shields argue that the evidence was insufficient to prove beyond a reasonable doubt that they were within the chain of distribution for the same carfentanil Myers distributed to L.K.W. We disagree.

We review sufficiency-of-the-evidence claims de novo. *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). In reviewing the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When bringing a sufficiency claim, the defendant "bears a very heavy burden." *Kelley*, 461 F.3d at 825. "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)). In order to apply the § 841(b)(1)(C) sentencing enhancement to Hamm's and Shields's distribution convictions, there must have been sufficient evidence to prove beyond a reasonable doubt that Hamm and Shields were in the chain of distribution for the same carfentanil that resulted in L.K.W.'s death. *Hamm*, 952 F.3d at 747; *United States v. Swiney*, 203 F.3d 397, 406 (6th Cir. 2000).

Hamm and Shields first argue that, because the Hamms had normal reactions to the drugs purchased from Shields, Myers could not have distributed those same drugs to L.K.W. But a reasonable jury could have concluded that the evidence presented at trial credibly explained the individuals' differing reactions. For example, the jury could have concluded that the Hamms sampled a less potent dose. At trial, the government's toxicology expert, Mike Ward, testified that drugs are often unevenly mixed, resulting in doses with different levels of potency. Alternatively, the jury could have concluded that the Hamms had developed a high tolerance for opioids. Ward also testified that a person's reaction to carfentanil depends on their tolerance for related substances, including fentanyl. The Hamms were daily fentanyl users—and relatively heavy users at that. A reasonable jury could therefore have determined that the Hamms had developed a higher tolerance for carfentanil than L.K.W.

The jury could have also considered Jones's reaction to the drugs purchased from Shields as evidence of the fact that the drugs distributed by Shields and Hamm were the same drugs Myers distributed to L.K.W. After ingesting the drugs purchased from Shields, Jones immediately "blacked out." The Hamms even drove Jones to a hospital and briefly considered seeking medical treatment for him. Although Shields and Hamm suggest that Jones's reaction may have been a result of Jones ingesting Xanax prior to ingesting Shields's drugs, Jones testified that he did not use Xanax in 2016, let alone on that day. Furthermore, Jones's reaction closely resembled the reactions of the two individuals who were with L.K.W. on the night of L.K.W.'s overdose. For example, L.K.W.'s girlfriend, Saundra Booth, began "feeling like little needles all over" within "a minute or two" of consuming the drugs, and she promptly blacked out. R. 295, PID 2295. Similarly, L.K.W.'s friend, Gabriel Foster, was "incoherent" when emergency responders arrived, and required the administration of Narcan. *Id.* at 2183–88. Thus, viewed in the light most favorable

to the government, the evidence supports the jury's conclusion that Jones consumed the same drugs that Myers ultimately distributed to L.K.W.

Next, Hamm and Shields argue that Myers had other sources for the drugs she distributed, and that the drugs she sold to L.K.W. were from another source of supply. Nevertheless, a reasonable jury, relying on the evidence presented at trial, could conclude that the carfentanil sold by Myers to L.K.W. was the same carfentanil distributed by Hamm and Shields. At trial, the government introduced into evidence text messages between Myers and L.K.W suggesting that Myers did not have any drugs on the morning of August 24, 2016. For example, Myers texted L.K.W., "Nope, we are both out," indicating that neither she nor Hamm had any drugs to sell. R. 296, PID 2464. Later, Myers again texted L.K.W., "No hun, I don't have anything. [Hamm and Jennifer] just left to re-up but will be back around 4 or so. . . . I will holler at you when they get back and I will get my shit ready for sell though." *Id.* at PID 2465. Viewing this evidence in the light most favorable to the government, the jury could reasonably find that, although Myers did have other sources of supply, Myers did not distribute drugs sourced from any other supplier on August 24, 2016, and that the drugs Myers sold to L.K.W. were the same drugs distributed by Shields and Hamm.

Taken together, the evidence presented at trial provides sufficient support for the jury's conclusion that Hamm and Shields were in the chain of distribution for the carfentanil that resulted in L.K.W.'s death.

### 2. Jury Instructions

Next, Defendants argue that the district court's jury instructions on the death-or-injury enhancement misstated the law. Specifically, Hamm and Shields contend that the district court was

required to explain that their underlying distribution convictions were predicated on Myers's distribution under the *Pinkerton* doctrine. Again, we disagree.

Under Rule 30 of the Federal Rules of Criminal Procedure, "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." We generally review a claim that a jury instruction improperly or inaccurately stated the law de novo. *United States v. Lawrence*, 735 F.3d 385, 427 (6th Cir. 2013). But we have held that when a defendant fails to object to the jury instructions during trial, we review the jury instructions for plain error. *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009).

The government contends that Hamm and Shields did not request a *Pinkerton* explanation in Jury Instruction No. 13 and failed to object at trial when the district court omitted one. The government thus argues that we should review Hamm's and Shields's claim for plain error. In response, Hamm and Shields contend that they preserved the issue by raising it via written motion, at two pretrial conferences, and at the close of the government's case. However, we need not resolve whether Hamm and Shields adequately preserved their objection for de novo review, because even under that less deferential standard, their claim of error fails.

In the first trial, Jury Instruction No. 17 explained that "[t]here are two ways that the government can prove the defendants guilty" of distribution of carfentanil resulting in death and serious bodily injury:

> The first is by convincing you that the defendant personally committed or participated in the crimes. The second is based on the legal rule that all members of a conspiracy are responsible for acts committed by the other members, as long as those acts are committed to help advance the conspiracy, and are within the reasonably foreseeable scope of the agreement. . . . In other words, under certain circumstances, the act of one conspirator may be treated as the act of all.

R. 124, PID 590. This second option stems from *Pinkerton* liability, whereby a member of a conspiracy can be held liable for the substantive offenses of his co-conspirators. *Pinkerton*, 328 U.S. at 647–48. As we made clear in the first appeal, *Pinkerton* "is a very broad rule." *Hamm*, 952 F.3d at 744.

On appeal, Hamm and Shields argued that *Pinkerton* was too broad a rule upon which the jury could base its application of the death-or-injury enhancement. Rather, Hamm and Shields asserted that, in order to apply the enhancement, the jury should have been required to find that the defendants were part of the distribution chain for the drugs distributed to L.K.W. *Id.* at 744. We agreed and concluded that "*Pinkerton* liability could only apply to the substantive offense, not the sentencing enhancement." *Id.* Relying on the standard established by this court in *Swiney*, we held that "[t]o apply the § 841(b)(1)(C) sentencing enhancement to the distribution convictions, the jury needed to find beyond a reasonable doubt that Hamm and Shields were part of the distribution chain to L.K.W." *Hamm*, 952 F.3d at 747.

On remand, the district court heeded this directive. In Jury Instruction No. 13, the court instructed the jury that it could apply the death-or-injury enhancement to Defendants' convictions for distribution only if it found "that the government ha[d] proved beyond a reasonable doubt that the defendants were part of the distribution chain that placed the carfentanil into the hands of [L.K.W.] that resulted in his death." R. 262, PID 2015. The instruction further explained:

(A) The term distribute means the defendants delivered or transferred a controlled substance. The term distribute includes the sale of a controlled substance.

(B) To prove that the defendants were part of the distribution chain, the defendants did not have to know that the substance they distributed was carfentanil. It is enough that the defendants knew that it was some kind of controlled substance. Further, the defendants did not have to know how much carfentanil they distributed. It is enough that the defendants knew that they distributed some quantity of a controlled substance.

(C) This enhancement may not be applied based solely on the actions of Tracey Myers. For the government to prove this sentencing enhancement, it must prove to you beyond a reasonable doubt that the carfentanil Myers distributed to [L.K.W.] was the same carfentanil that was distributed by Defendants Shields and Hamm on or about August 24, 2016.

*Id.* at PID 2015–16.

In this second appeal, Hamm and Shields now argue that Jury Instruction No. 13, like the previous Jury Instruction No. 17, misstated the law. Specifically, Hamm and Shields contend that both *Hamm* and *Swiney*, taken together, required the district court to explain that Defendants' substantive distribution convictions were predicated on Myers's distribution under the *Pinkerton* doctrine. This argument lacks merit for several reasons.

First, Jury Instruction No. 13 was an accurate statement of the law. Neither *Swiney* nor *Hamm* required the district court to include a *Pinkerton* explanation, particularly where the only issue left for the jury to decide was whether to apply the death-or-injury enhancement to the underlying distribution convictions. In *Swiney*, we held that "before any of the Defendants can be subject to the sentence enhancement of 21 U.S.C. § 841(b)(1)(C) . . . the district court must find that he or she is part of the distribution chain that led to [the overdose victim]'s death." 203 F.3d at 406. And in *Hamm*, we determined that because Jury Instruction No. 17 did not require the jury to find beyond a reasonable doubt that Hamm and Shields were part of the distribution chain to L.K.W., and because the instruction instead permitted the jury to rely on *Pinkerton* liability to apply the death-or-injury enhancement, the instruction misstated the law. *Hamm*, 952 F.3d at 747.

Thus, by instructing the jury that it could apply the death-or-injury enhancement only if it found "that the government ha[d] proved beyond a reasonable doubt that the defendants were part of the distribution chain that placed the carfentanil into the hands of [L.K.W.] that resulted in his

death," and by explaining that the enhancement could "not be applied based solely on the actions of Tracey Myers," Jury Instruction No. 13 accurately stated the applicable law. R. 262, PID 2015.

Second, Hamm and Shields incorrectly assert that their distribution convictions were definitively premised on *Pinkerton* liability. To the contrary, the jury in the first trial was permitted to find Hamm and Shields guilty of distribution by finding that *either* Hamm and Shields personally distributed carfentanil *or* that they were vicariously liable for Myers's distribution under *Pinkerton*. And on appeal, we held that "a reasonable juror could have traced Myers's carfentanil back to Hamm and Shields." *Hamm*, 952 F.3d at 739. It is therefore inaccurate to suggest that Hamm's and Shields's underlying distribution convictions were undoubtedly based on Myers's distribution. Although *Pinkerton* liability was one basis upon which the jury could find Hamm and Shields guilty, it was not the only basis.

Finally, the jury could have decided not to apply the death-or-injury enhancement to Hamm's and Shields's convictions. Contrary to Defendants' assertions that the jury was left with "no choice" but to apply the enhancement, the jury could have accepted Hamm's and Shields's theory of the case and found that Defendants were outside the chain of distribution. Jury Instruction No. 14 even summarized Hamm's and Shields's theory of the case:

> It is the position of the defendants that the carfentanil distributed by Tracey Myers to [L.K.W.] on or about August 24, 2016, was not the same carfentanil distributed by Shields and Hamm on or about that same date. The defendants claim that Tracey Myers had alternative sources of supply and mixed the substance obtained from the defendants with other unknown substances that may have included other carfentanil. Thus, the defendants claim that the drugs that led to [L.K.W.]'s death were different from the substances distributed by defendants.

R. 262, PID 2017. Had the jury determined that the government failed to prove beyond a reasonable doubt that the carfentanil distributed by Myers was the same carfentanil distributed by

Shields and Hamm, the jury would not have applied the death-or-injury enhancement to Hamm's and Shields's distribution convictions.

In sum, the district court's jury instructions properly set forth the standards established in *Hamm* and *Swiney* and tasked the jury with answering only one question: whether Defendants were in the chain of distribution for the same carfentanil that led to L.K.W.'s death. Because Jury Instruction No. 13 accurately stated the applicable law, we conclude that the district court did not err in so instructing the jury.

### 3. Shields's Request for a Severed Trial and Motion for a Mistrial

Finally, Shields argues that the district court erred in denying his motion for severance and for a mistrial following the admission of testimony concerning Hamm's efforts to tamper with witnesses. We disagree and affirm the district court's decisions not to sever Defendants' trials or grant a mistrial.

#### a. Background

Audio-recorded calls revealed that, prior to the second trial, Hamm contacted Jennifer to encourage her to testify falsely, purportedly in an effort to distance himself from the chain of distribution. When the government sought to introduce these calls into evidence, Shields filed a motion in limine seeking their exclusion. The district court denied Shields's motion, reasoning that the calls would not severely prejudice Shields because it was clear that Shields had not participated in the calls.

On the first day of trial, Jones informed the government that he had been placed in the same local jail cell as Hamm for five or six days leading up to trial, and that during that time Hamm had also pressured Jones to testify falsely. The government informed the court and defense counsel of Hamm's efforts. Shields's counsel sought severance, arguing that testimony regarding Hamm's

witness tampering would radically prejudice Shields. The court denied Shields's motion and explained that any prejudice could be "ameliorated by a limiting instruction." R. 302, PID 2674.

During Jones's testimony, Shields's counsel objected and moved for severance and for a mistrial. The court again denied Shields's motions, but it instructed the jury not to consider evidence about Hamm's witness tampering against Shields. The court gave the same limiting instruction during Jennifer's testimony. After Jennifer's direct examination, Shields's counsel renewed his motions for severance and for a mistrial. The court again denied Shields's motions, explaining that it had given the jury limiting instructions and that the jury was presumed to follow those instructions. Shields did not renew his motion for severance at the close of all evidence.

b. *Severance*

Rule 14 of the Federal Rules of Criminal Procedure provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Ordinarily, we review a district court's denial of a motion to sever for an abuse of discretion. *United States v. Sherrill*, 972 F.3d 752, 762 (6th Cir. 2020). But when a defendant fails to renew his motion to sever following the close of all evidence, we have in some instances determined that the issue is waived and have declined to review the motion at all. *Id.* (collecting cases). In other instances, "we have reviewed the issue for plain error." *Id.* (collecting cases).

Here, the government argues that, because Shields did not renew his motion to sever at the close of evidence, he has waived this issue on appeal. Shields, in turn, argues that the district court *sua sponte* renewed any motions or objections when it stated the following:

> Out of an abundance of caution, I'll note that the defendants would, to the extent Rule 29 applies, renew their motions at this time based upon the evidence,

- 13 -

> additional evidence that was to be submitted. The Court's ruling would be the same. It would not alter the Court's determination, but it is preserved for purposes of the record, the arguments that were made previously.

R. 296, PID 2509. However, this statement by the court pertained only to Defendants' sufficiency-of-the-evidence claims brought pursuant to Federal Rule of Criminal Procedure 29. The court did not renew Shields's motion for severance brought pursuant to Federal Rule of Criminal Procedure 14. Thus, by failing to renew his motion for severance following the close of evidence at trial, Shields has not adequately preserved this argument for review.

Yet, even if we were to review the district court's denial of Shields's motion for severance, we would do so for plain error, and Shields's claim would also fail. Under plain-error review, Shields must show: "(1) error; (2) that was plain; (3) that affected a substantial right and that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Fields*, 763 F.3d 443, 456 (6th Cir. 2014). Shields cannot demonstrate that the district court plainly erred in denying his motion to sever Defendants' trial.

Under Federal Rule of Criminal Procedure 8(b), there is a general preference for joint trial of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* "And a 'spillover of evidence' from one case to another 'generally does not require severance,' unless Defendant can point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *Fields*, 763 F.3d at 457 (quoting *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002)). Even if the defendant can establish "some potential jury confusion, this must be balanced against society's need for speedy and efficient trials." *United States v. Gallo*, 763 F.2d

1504, 1525 (6th Cir. 1985). And "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

Shields argues that Jennifer's and Jones's testimony regarding Hamm's witness tampering was sufficiently prejudicial to warrant severance. Specifically, Shields contends that such testimony could have led the jury to impermissibly attribute Hamm's conduct to Shields, thus "making a verdict in favor of the § 841(b)(1)(C) sentencing enhancement for Mr. Shields far more likely." Shields Br. at 30. But Shields's claim is entirely speculative and unsupported by the evidence. At trial, for example, Jones testified that he had neither seen nor spoken with Shields before, let alone about this case or about his testimony.

Regardless, throughout trial the district court repeatedly admonished the jury *not* to consider Hamm's conduct with respect to Shields. And Jury Instruction No. 22 further instructed the jury to consider evidence of witness tampering against Hamm only:

> You have heard testimony from Special Agent Jared Sullivan that Wesley Hamm made jail phone calls/texts that the government claims were designed to influence the testimony of other witnesses in this case. Likewise, you have heard testimony from Matthew Jones from which you might conclude that Defendant Hamm was attempting to influence him to give false or incorrect information during his testimony in this trial. *You can only consider this testimony against Defendant Hamm* in deciding whether the government has proved him guilty. *You cannot consider it in any way against Defendant Shields.*

R. 262, PID 2025 (emphasis added). "Juries are presumed to be capable of following instructions, like those given in this case, regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) (citing *Zafiro*, 506 U.S. at 540–41). And Shields has offered no evidence to support his claim that such limiting instructions were ineffective.

Moreover, unlike cases involving large numbers of conspiracies and conspirators, where it is impossible "for the jury to give each defendant the separate and individual consideration of the

evidence against him to which he was entitled," *Gallo*, 763 F.2d at 1526 (internal quotation marks and citation omitted), this case involves only two defendants and only one narrow issue. We find that, in this context, the jury could distinguish between evidence introduced against each defendant.

Beyond making a bald and speculative assertion that the jury could have found that Shields was involved in Hamm's witness tampering, or could have attributed Hamm's conduct to Shields, Shields "has failed to show specific and compelling prejudice that would mislead and confuse the jury in the absence of a separate trial." *Walls*, 293 F.3d at 966. We therefore find no plain error in the district court's denial of Shields's motion for severance in this case.

### c. *Mistrial*

"We review a district court's denial of a motion for mistrial under the abuse-of-discretion standard." *United States v. Wimbley*, 553 F.3d 455, 460 (6th Cir. 2009). Where, as here, the defendant argues that the district court should have granted a mistrial due to improper testimony, "we must first consider whether the challenged testimony was in fact improper." *United States v. Howard*, 621 F.3d 433, 458 (6th Cir. 2010). Only when we conclude that the testimony was improper do we then determine "whether the challenged testimony 'was so clearly improper and prejudicial to the defendants that the harm could not be erased by any instructions which the court might give.'" *Id.* at 459 (quoting *United States v. Smith*, 601 F.3d 530, 538 (6th Cir. 2010)). The factors we consider in making this determination include:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

*Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003).

Shields contends that Jones's and Jennifer's testimony regarding Hamm's witness tampering efforts was sufficiently prejudicial to warrant a mistrial. Shields's argument fails because he cannot demonstrate that the challenged testimony was improper. The district court permitted the government to introduce limited evidence of Hamm's efforts to influence Jones's and Jennifer's testimony, and the court's instructions to the jurors clarified that evidence of Hamm's efforts to influence witness testimony could not be considered against Shields. Jones's and Jennifer's corresponding testimony did not exceed the scope permitted by the district court. Because the challenged testimony was proper, the district court did not abuse its discretion in denying Shields's motion for a mistrial.

## III

For the foregoing reasons, we AFFIRM.